STATE OF NORTH CAROLINA v. JERRY WAYNE EASON

No. 485A89

(Filed 3 April 1991)

## 1. Constitutional Law § 354 (NCI4th) — murder — Fifth Amendment privilege — valid claim

The trial court did not err in a noncapital prosecution for first degree murder and arson by refusing to require defendant's mother to answer questions during a *voir dire* hearing on a motion to suppress after she invoked her Fifth Amendment privilege against self-incrimination. Defendant's mother had been convicted of giving false information to the police about the defendant and her case was on appeal for trial *de novo* in superior court; she invoked her Fifth Amendment privilege for the very purpose the protections embodied in that amendment were created and thus had a valid claim of privilege. U. S. Const., amend. V; N. C. Const., Art. I § 23.

**Am Jur 2d, Criminal Law § 943.**

**Plea of guilty or conviction as resulting in loss of privilege against self-incrimination as to crime in question. 9 ALR3d 990.**

## 2. Searches and Seizures § 21 (NCI3d) — search warrant — informant named in warrant — sufficient

There was a substantial basis for a magistrate's determination that probable cause existed to issue a search warrant in a murder and arson prosecution where the informant who provided the information was Doris T. Hoffman, a "citizen-informant" whose name appeared in the search warrant; the fact that Hoffman was named and identified as the informant provided the magistrate with enough information to permit him to determine that Hoffman was reliable.

**Am Jur 2d, Searches and Seizures §§ 65, 68, 69.**

## 3. Appeal and Error § 147 (NCI4th) — murder and arson — procedure for serving search warrant — not raised at trial — not considered on appeal

A contention in a murder and arson prosecution that the officer serving a search warrant failed to comply with N.C.G.S. § 15A-252 was not preserved for appellate review where nothing in the record indicates that the trial court had anything before

it referring to the officer's alleged violation of the statute when it denied defendant's motion.

**Am Jur 2d, Appeal and Error § 545.**

**4. Criminal Law § 68 (NCI3d) — murder and arson — victim's little finger — admissible as to identity**

The trial court did not err in a prosecution for murder and arson by allowing the State to introduce the victim's left little finger where the victim's body was charred almost beyond recognition and the identity of the body was a proper issue for determination. Its probative value was not substantially outweighed by any danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 402.

**Am Jur 2d, Evidence § 775.**

**5. Criminal Law § 50.1 (NCI3d) — murder and arson — testimony of arson expert — admissible**

The trial court did not err in a prosecution for murder and arson by denying defendant's motion to strike opinion testimony by the State's expert witness that the burning of the victim's home was of incendiary origin. There was a sufficient basis upon which the expert could base his opinion and his testimony was not so speculative as to require striking it from the record. N.C.G.S. § 8C-1, Rule 702.

**Am Jur 2d, Arson and Related Offenses § 49; Expert and Opinion Evidence § 407.**

**Expert and opinion evidence as to cause or origin of fire. 88 ALR3d 230.**

**6. Criminal Law § 356 (NCI4th) — murder and arson — defendant placed in custody during trial — no abuse of discretion**

The trial court in a murder and arson prosecution did not abuse its discretion by having defendant taken into custody while his trial was in progress where the court had previously ordered defendant not to have any direct or indirect contact with any of the State's witnesses; defendant, in a courthouse hallway during a morning break, "gave the finger" and made another gesture toward a State's witness; the court ordered defendant taken into custody; the court's action was taken out of the presence of the jury and there is nothing to indicate that the jury knew of or was influenced by the court's order;

and the trial court specifically ordered the sheriff to give defendant's attorney free access to defendant. The trial court has discretionary power to order a defendant into custody during the progress of a trial.

**Am Jur 2d, Trial §§ 39, 43.**

7. **Criminal Law § 75.15 (NCI3d) — statement by defendant to officer — made while hung over — admissible**

The trial court did not err in a murder and arson prosecution by denying defendant's motion to suppress a statement made while hung over where defendant's contention that he was not in control of his mental faculties was contradicted by evidence sufficient to support a determination by the trial court that he was not so hung over as to render his statement involuntary.

**Am Jur 2d, Evidence §§ 557, 1134.**

**Sufficiency of showing that voluntariness of confession or admission was affected by alcohol or other drugs. 25 ALR4th 419.**

8. **Criminal Law § 75.3 (NCI3d) — statement by defendant — recitation of evidence against him — statement admissible**

The trial court did not err in a murder and arson prosecution by denying defendant's motion to suppress his statement on the basis that an officer's statement of the evidence against defendant constituted mental duress where defendant raised the issue and the officer answered truthfully.

**Am Jur 2d, Evidence §§ 544, 575.**

9. **Criminal Law § 75.11 (NCI3d) — waiver of rights — refusal to sign waiver — statement admissible**

There was no merit to a murder and arson defendant's contention that his refusal to sign a waiver was tantamount to invoking his right to counsel and to remain silent where there was evidence to support the trial court's finding that defendant had agreed to answer questions without the presence or advice of counsel.

**Am Jur 2d, Evidence § 555.**

**What constitutes assertion of right to counsel following Miranda warnings — state cases. 83 ALR4th 443.**

**10. Arrest and Bail § 39 (NCI4th)— murder and arson—arrest warrant—probable cause**

A murder and arson defendant's statement did not result from an unlawful seizure of his person where there was sufficient probable cause to support the warrant upon which he was arrested in that defendant's mother had told an officer that defendant admitted shooting the victim and setting fire to the victim's house, and the mother's statements were corroborated by physical evidence and the statements of other individuals known to the officer.

**Am Jur 2d, Arrest § 16.**

**11. Criminal Law § 35 (NCI3d)— murder and arson—victim's insurance beneficiary—not admissible**

The trial court did not err in a prosecution for murder and arson by sustaining the State's objection to a defense question as to whether the victim's wife was a beneficiary of the victim's life insurance policy. Although defendant contended that the evidence was relevant to show that someone else committed the murder, the evidence tended only to show that the victim's wife was the beneficiary of his life insurance policy, did not point directly at the guilt of another, and does not meet the test of relevancy under N.C.G.S. § 8C-1, Rule 401.

**Am Jur 2d, Evidence § 441.**

**12. Witnesses § 1.2 (NCI3d)— murder and arson—nine-year-old witness—testimony admissible**

The trial court did not err in a murder and arson prosecution by allowing a nine-year-old to testify even though the trial court did not make a specific finding as to whether the child was capable of expressing herself concerning the matters to which she was to testify. It is obvious that the court determined that the witness was able to express herself and the record supports that conclusion.

**Am Jur 2d, Witnesses §§ 88, 90, 92, 93.**

**13. Criminal Law § 73 (NCI3d)— letters from defendant in prison—admissible**

The trial court did not err in a prosecution for murder and arson by permitting testimony about a statement defendant made in a letter to the witness after he was arrested

and placed in jail even though defendant's letters to the witness had disappeared. The witness testified that she recognized the letters as being in defendant's handwriting and that they were signed with defendant's first name, the letters were not under the witness's exclusive control when they disappeared, and the letters were not too remote in time to be relevant. N.C.G.S. § 8C-1, Rule 801(d).

**Am Jur 2d, Evidence §§ 451, 473.**

**14. Homicide § 21.5 (NCI3d); Arson and Other Burnings § 25 (NCI4th) — murder and arson — evidence sufficient**

The trial court did not err in a murder and arson prosecution by denying defendant's motion to dismiss at the close of all of the evidence where there was more than sufficient evidence to support a finding of premeditation and deliberation and, taken in the light most favorable to the State, there was evidence that the victim was alive at the moment when the mobile home was set on fire, so that the mobile home was occupied at the time it burned. N.C.G.S. § 14-58.

**Am Jur 2d, Homicide §§ 439, 442.**

**15. Homicide § 30 (NCI3d) — murder — failure to submit lesser verdicts — no error**

The trial court did not err in a murder prosecution by failing to submit possible verdicts of second degree murder, voluntary manslaughter and involuntary manslaughter where the State introduced evidence tending to show that every element of first degree murder was present and, with the exception of defendant's general denial that he had anything to do with the killing, there was no evidence to negate the State's proof as to any element.

**Am Jur 2d, Homicide §§ 530, 531.**

**16. Criminal Law § 427 (NCI4th) — murder and arson — argument that State's evidence uncontradicted — not a comment on defendant's failure to testify**

The prosecutor's argument to the jury in a murder and arson prosecution that the State's case was uncontradicted did not amount to a comment on defendant's failure to testify.

**Am Jur 2d, Trial § 241.**

STATE v. EASON

[328 N.C. 409 (1991)]

Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.

17. **Criminal Law § 496 (NCI4th)— jury's request to review testimony—denied—no abuse of discretion**

The trial court did not abuse its discretion in a murder and arson prosecution by denying the jury's request to review the testimony of the State's firearm and tool mark identification expert. The trial court indicated that it was denying the request because it did not want to give undue emphasis to the testimony of any particular witness. N.C.G.S. § 15A-1233(a).

Am Jur 2d, Trial § 1041.

Right to have reporter's notes read to jury. 50 ALR2d 176.

18. **Criminal Law § 91 (NCI4th)— murder and arson—no probable cause hearing—grand jury indictment—no error**

There was no error in trying a defendant for murder and arson without a probable cause hearing where defendant was indicted by a grand jury.

Am Jur 2d, Criminal Law §§ 412, 413.

19. **Constitutional Law § 252 (NCI4th)— murder and arson—funds for private investigator—insufficient showing**

The trial court did not err in a prosecution for murder and arson by denying defendant's motion for funds to hire a private investigator where the only information in the record was defendant's two motions. In order for an indigent criminal defendant to be entitled to funds with which to hire a private investigator, the defendant must show that there is a reasonable likelihood the investigator will materially assist him in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial.

Am Jur 2d, Criminal Law § 1006.

Right of indigent defendant in state criminal case to assistance of investigators. 81 ALR4th 259.

20. **Criminal Law § 959 (NCI4th)— motion for appropriate relief—newly discovered evidence—insufficient**

A murder and arson defendant's motion for appropriate relief, filed with the Supreme Court, was denied where Nick

Stroud came forward eight days after defendant's conviction and confessed to the murder, but recanted his confession the next day. Defendant failed to establish that Stroud would give newly discovered evidence in that Stroud stood by his disavowal; confessed while in a state of confusion and depression after consuming a large quantity of beer; the confession was without corroboration; and the confession was not credible.

**Am Jur 2d, New Trial §§ 444, 467.**

APPEAL of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment for first degree murder entered by *Grant, J.,* at the 17 July 1989 Criminal Session of Superior Court, LENOIR County. On 21 December 1989, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on the appeal of his first degree arson conviction. Heard in the Supreme Court on 12 December 1990.

*Lacy H. Thornburg, Attorney General, by G. Patrick Murphy, Assistant Attorney General, for the State.*

*William D. Spence and T. Dewey Mooring for the defendant-appellant.*

MITCHELL, Justice.

The defendant Jerry Wayne Eason was tried non-capitally upon proper bills of indictment charging him with first degree murder and arson of a mobile home. A jury found the defendant guilty of both offenses as charged. The trial court then entered judgment sentencing the defendant to imprisonment for life for the first degree murder conviction and to a consecutive term of imprisonment for thirty years for the arson conviction. On appeal, the defendant brings forward numerous assignments of error which we address *seriatim*. We conclude that the defendant received a fair trial free from prejudicial error.

The State's evidence at trial tended to show that on 4 August 1988, Guy Vernon Warren was found dead amongst the burned remains of his mobile home. He was last seen alive at approximately 11:45 p.m. on 3 August 1988. The victim's body was charred all over with the exception of a small area on the front which had been against the floor, and the facial features were burned beyond recognition. A neighbor could identify the victim's body only by

a scar on the neck. An autopsy revealed that the victim had been shot three times in the chest.

SBI Agent Phillip Brinkley who investigated the scene opined that the fire was of an incendiary origin ignited by an open flame source next to the point where the body was found in the center of the mobile home where the victim's bedroom had been located. Near the mobile home the agent observed a pickup truck the victim had been using, which was owned by Terry Moore. All four tires on the vehicle bore slash marks and were flat.

Dennis Hayes testified that approximately three weeks before the murder, the defendant suffered facial cuts during a fight with the victim. Hayes further testified that he and the defendant discussed the fight while they were shooting pool on 3 August 1988. During the conversation, the defendant stated he was going to get even.

Phillip Mitchum testified that he was with the defendant until 2:30 a.m. on 4 August 1988. When the defendant got out of Mitchum's truck, Mitchum saw the handle of a small gun wrapped in a cloth in defendant's possession.

Melissa Bush, a nine-year-old girl, testified that the defendant was in her home on the evening of 3 August 1988. She testified that he pulled out a gun and said, "I want to kill somebody tonight."

Sandy Potter, Melissa's mother, testified that the defendant came to her house with Mitchum at about 7:30 or 8:00 p.m. on 3 August 1988. Potter was living at the time with the defendant's half-brother. Potter said the defendant was upset and had been drinking. He had a small gun with him, which she identified as being similar to State's Exhibit No. 7, a .25 caliber Raven automatic pistol. The defendant kept saying that he was going to get back at somebody who had "messed him up." Earlier in the day, Potter had seen the defendant with a long knife at his house. She identified that knife as being the same knife that was recovered from the defendant's house during a search by investigators.

Roger Brown and Raeford Page testified that they had previously co-owned a .25 caliber automatic pistol which Page sold to the defendant for $35.00. They had fired that pistol and other guns at a point behind Brown's home. During the investigation of the victim Warren's death, an investigator went with them to that site and recovered six spent projectiles and four spent shell casings.

Captain Lester Gosnell of the Lenoir County Sheriff's Department testified that the defendant was arrested at approximately 10:27 a.m. on 4 August 1988 and taken to the sheriff's department where he was read his *Miranda* rights. After waiving his *Miranda* rights, the defendant stated that he came home at 11:00 p.m. on 3 August 1988 and stayed there until he was arrested. He stated that he had been in a fight with the victim on an earlier date. During that incident, the victim had hit the defendant causing an injury to his mouth which required twenty stitches. The defendant said he did not own any firearms other than a 7.35 millimeter bolt action rifle and did not know about anything happening to the victim; however, he added that whatever the victim got, he deserved. A search of the defendant's residence pursuant to a search warrant produced a large knife, an empty box of Federal .25 caliber automatic bullets, and a spent .25 caliber shell casing.

Susan Komar, an SBI Agent, was qualified as an expert in firearms and tool mark identification and gave her opinion that the .25 caliber shell casing found at the defendant's home and two of the spent .25 caliber shell casings recovered behind Brown's home had been fired from the same gun. Moreover, she testified that the three .25 caliber projectiles removed from the victim and the six .25 caliber projectiles found behind Brown's home had been fired by the same weapon. She stated that the projectiles were consistent with either Remington or Federal manufactured ammunition. In addition, she compared the cuts in the four tires of the pickup truck at the victim's home with a test cut made using the knife found in the defendant's home. She testified that the knife found in the defendant's residence made the cut in one of the tires. The other three tire cuts had microscopic characteristics similar to the test cut, but she could not make a conclusive match.

After the defendant was arrested, he underwent an evaluation at Dorothea Dix Hospital. During the evaluation period, he and Sandy Potter corresponded by letter. Potter testified that in one of his letters to her, the defendant indicated that "he was satisfied that the SOB knew who he was before he died."

The defendant introduced no evidence at trial.

I.

*The Defendant's Appeal*

[1] By his first assignment of error, the defendant contends that the trial court erred in refusing to require his mother, Doris T.

Hoffman, to answer questions during a *voir dire* hearing concerning the defendant's motion to suppress items seized pursuant to a search warrant. The defendant's attack on the search warrant focused on the alleged use of untruthful information to establish probable cause for the issuance. During the *voir dire* hearing on the defendant's motion, Captain Gosnell testified that Doris Hoffman met him on the morning of 4 August 1988 at the Lenoir County Sheriff's Department. She said the defendant had told her that earlier that morning he had shot Guy Warren three times and set Warren's mobile home on fire. She also stated that the defendant had admitted slicing the tires on a vehicle owned by Terry Moore.

Gosnell relied upon the information supplied by Hoffman in his affidavit establishing probable cause for the search warrant. On 11 January 1989, Hoffman testified under oath in a bond hearing and admitted talking to Gosnell on 4 August 1988 but denied telling him that the defendant had said anything about killing Warren.

After Gosnell testified during the *voir dire* hearing on the defendant's motion to suppress, the defendant called Hoffman who, after answering preliminary questions, invoked her fifth amendment privilege against self-incrimination and refused to answer questions concerning anything the defendant may have told her about killing Guy Warren or questions concerning anything she may have told Gosnell on the morning of 4 August 1988. When Hoffman invoked the privilege and refused to answer questions, the defendant requested that the trial court compel her to answer. The trial court denied all such requests.

At the conclusion of Hoffman's testimony, the trial court had the prosecutor state for the record the nature of the charges pending against Hoffman. The prosecutor noted for the record that based on her testimony at the 11 January 1989 bond hearing, Hoffman had been charged with giving false information to a police officer. She had been convicted of that charge in district court, and the case was then on appeal for trial *de novo* in superior court.

An individual has the right to invoke her fifth amendment privilege to avoid being compelled to give testimony which might make her subject to prosecution under state or federal laws. U.S. Const. amend. V; N.C. Const. art. I, § 23. When the individual invokes the fifth amendment privilege, the trial court must determine whether the question is such that it may reasonably be inferred that the answer may be self-incriminating. *See, e.g., Hoffman*

*v. United States*, 341 U.S. 479, 486-87, 95 L. Ed. 1118, 1124 (1951);
*Lafontaine v. Southern Underwriters*, 83 N.C. 132, 139 (1880). In
situations where the trial court determines that the answer will
not be self-incriminating, the trial court may compel the individual
to answer the question. *Id.* In this case, at the time of the *voir
dire* hearing, Hoffman had been convicted of giving false informa-
tion to the police about the defendant, and her case was on appeal
for trial *de novo* in superior court. When Hoffman invoked her
privilege at the *voir dire* hearing, she was being asked to testify
about the very incident which led to her conviction and for which
she still faced trial *de novo*. In other words, Hoffman invoked
her fifth amendment privilege for the very purpose the protections
embodied in that amendment were created. Thus, Hoffman had
a valid claim of privilege, and the trial court did not err in denying
the defendant's motion to compel her to testify. This assignment
of error is without merit.

[2] By his next assignment of error, the defendant contends the
trial court erred in concluding that the statements of Hoffman
included in the search warrant affidavit possessed sufficient aspects
of reliability and credibility to establish probable cause. The defend-
ant alleges that Gosnell's affidavit did not contain sufficient facts
to permit the magistrate to find that Hoffman's information was
reliable and credible; therefore, there was no basis upon which
the magistrate could conclude probable cause existed. This assign-
ment is without merit.

> The task of the issuing magistrate is simply to make a prac-
> tical, common sense decision whether, given all the circumstances
> set forth in the affidavit before him, including the "veracity"
> and "basis of knowledge" of persons supplying hearsay infor-
> mation, there is a fair probability that contraband or evidence
> of a crime will be found in a particular place. And the duty
> of a reviewing court is simply to ensure that the magistrate
> had a "substantial basis for . . . conclud[ing]" that probable
> cause existed.

*State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984)
(citing *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527,
548 (1983) ). This approach to determining probable cause is known
as the totality of the circumstances analysis. *Id.* In this case, the
informant who provided the information for the search warrant
was Doris T. Hoffman, a "citizen-informant" whose name appeared

in the search warrant affidavit. The fact that Hoffman was named and identified as Gosnell's informant in the search warrant affidavit provided the magistrate with enough information to permit him to determine that Hoffman was reliable. *See People v. Simon*, 107 A.D.2d 196, 198, 486 N.Y.S.2d 118, 120 (1985) (individual's status as a named and identified private citizen is sufficient to establish his reliability); *cf. United States v. Harris*, 403 U.S. 573, 599, 29 L. Ed. 2d 723, 743 (1971) (Harlan, J., dissenting) (the citizen inform-ant is the most credible type of informant); *People v. Glaubman*, 175 Colo. 41, 51, 485 P.2d 711, 717 (1971) (when an ordinary citizen comes forward with reports of criminal activity, there is no need to subject the information to the same special scrutiny given infor-mation supplied by unidentified or "confidential" informants).

Further, the affidavit before the magistrate stated, *inter alia*, that Hoffman was the defendant's mother and that at 3:54 a.m. on 4 August 1988, the defendant came to her house and told her he had just killed Guy Warren by shooting him three times and setting his bed on fire. The affidavit also stated that when the defendant came to Hoffman's house he had a pistol, a shotgun, and a big knife with him. Applying the totality of the circumstances test prescribed in *Arrington* and giving proper deference to the decision of the magistrate to issue the search warrant, we conclude that there was more than a "substantial basis" for his determination that probable cause existed.

[3] By his next assignment of error, the defendant contends the trial court erred in denying his motion to suppress evidence seized pursuant to the search warrant because the officer serving it failed to comply with N.C.G.S. § 15A-252. We decline to consider this assignment because the defendant failed to preserve this question for appellate review. In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent. N.C.R. App. P. 10(b)(1). Nothing in the record before us indicates that the trial court had anything before it referring to the officer's alleged viola-tion of the statute when it denied the defendant's motion. This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal. *State v. Smith*, 50 N.C. App. 188, 272 S.E.2d 621 (1980).

## STATE v. EASON

[328 N.C. 409 (1991)]

**[4]** By his next assignment of error, the defendant contends that the trial court erred by allowing the State to introduce State's Exhibit No. 37A, a plastic cup containing the victim's left little finger. We disagree.

Generally, any relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1988). On the other hand, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1986). Nevertheless, relevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the cause of the party who offers it as evidence. *See, e.g., State v. Williams*, 17 N.C. App. 39, 43, 193 S.E.2d 452, 455 (1972), *cert. denied*, 282 N.C. 675, 194 S.E.2d 155 (1973) (victim's tattooed skin relevant to identity).

In this case, the victim's body was charred almost beyond recognition. In fact, a neighbor was only able to identify the victim's body by a scar on the neck. Hence, the identity of the body found was a proper issue for determination. In order to prove the identity of the victim, the State introduced the finger found at the crime scene and presented evidence that the fingerprint taken from it matched a fingerprint from the little finger of Guy Warren on file with the Kinston Police Department. We conclude that the trial court did not err by admitting the finger as evidence, because its probative value as to the issue of the identity of the victim was not substantially outweighed by any danger of unfair prejudice. This assignment of error is without merit.

**[5]** By his next assignment of error, the defendant contends the trial court erred by denying his motion to strike opinion testimony by the State's expert witness, SBI Agent Phillip Brinkley, that the burning of the victim's home was of incendiary origin. The defendant argues that the opinion testimony was entirely speculative and without basis. We disagree.

A witness qualified as an expert may give testimony in the form of an opinion if his or her specialized knowledge will assist the trier of fact. N.C.G.S. § 8C-1, Rule 702 (1988). The expert may base such an opinion on information not otherwise admissible, so long as it is the type of information reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject. N.C.G.S. § 8C-1, Rule 703 (1988).

On direct examination, the expert described the findings of his investigation which revealed several things. The ends of the mobile home were heavily damaged yet still maintained some structural integrity. All of the center portion of the mobile home, however, was totally destroyed. A set of bed springs found in the remains of the center portion of the mobile home had been completely burned clean of bedding material leaving only the metal springs. The springs were only six inches from the body. A couch immediately adjacent to the springs was heavily damaged yet not totally consumed. On the ceiling over the bed, the metal part of the roof had been burned clean of soot, yet soot was present on the portion of the roof above the couch. Based on such facts, the expert concluded that the hottest and longest burning area in the mobile home had been the point at which the bed springs were located. Also, he could not find any apparent evidence of an accidental origin such as a short in the electrical wiring. The expert testified that based on those facts, he formed the opinion that the fire had an incendiary origin which would mean it was an intentionally set fire as opposed to one that was purely accidental or started without intent to burn the mobile home.

On cross-examination, the defendant inquired further into the basis of the expert's opinion that the fire had an incendiary origin. The expert testified that his opinion was based primarily on the elimination of any accidental source, explaining that he eliminated the suggestion of a cigarette ignition by what he had been told about the time frame of the fire. Because of the time frame associated with the fire, the expert believed that an open flame source was necessary to cause it to start and burn as quickly as it did. The expert admitted that he did not know the exact cause of the fire but stated that based on his findings, an open flame source was necessary to create a fire with the characteristics of the one which burned the victim's mobile home. Given such testimony, we conclude that there was a sufficient basis upon which the expert could base his opinion; therefore, his opinion testimony was not so speculative as to require striking it from the record. Accordingly, this assignment of error is without merit.

[6] The defendant next contends the trial court erred by ordering that he be taken into custody while his trial was in progress. The defendant contends the trial court's action constituted punishment and improperly obstructed his defense by limiting his access to his attorneys. We disagree.

STATE v. EASON

[328 N.C. 409 (1991)]

On 18 July 1989, after the noon recess on the second day of trial, the trial court denied the State's motion to have the defendant taken into custody for improperly contacting and tampering with the State's witnesses. Instead, the trial court ordered the defendant not to have any direct or indirect contact with any of the State's witnesses. The trial court further informed the defendant that if he or anyone on his behalf violated this order, the trial court would consider such conduct to be witness tampering and have the defendant taken into custody.

Two days later, the defendant was in the courthouse hallway during a morning break. In the presence of State's witness, Michael Watson, the defendant "gave the finger" to Watson and grabbed himself in the groin area in a gesture toward Watson. Upon being informed of this conduct and hearing evidence concerning the defendant's actions, the trial court ordered that the defendant be taken into custody.

The trial court has discretionary power to order a defendant into custody during the progress of the trial, and its action in so doing in the absence of the jury, without anything to indicate in the presence of the jury that the defendant has been taken into custody, is not prejudicial. *State v. Smith*, 237 N.C. 1, 21, 74 S.E.2d 291, 304 (1953). The record before us clearly shows that the trial court acted with good cause to prevent the defendant from intimidating or tampering with the State's witnesses. The trial court's action was taken out of the presence of the jury, and there is nothing in the record to indicate the jury knew of or was influenced by the court's order. In addition, the trial court specifically ordered the sheriff to give the defendant's attorneys free access to the defendant "to allow him to assist them in the preparation of their case." We conclude the trial court acted properly in ordering that the defendant be taken into custody. Accordingly, this assignment of error is without merit.

[7] By his next assignment of error, the defendant contends the trial court erred in denying his motion to suppress a statement he made to Captain Gosnell in which he admitted prior problems with the victim but stated that he had not left home after 11:00 p.m. on the night of 3 August 1988 and knew nothing about the crimes in question. In support of this assignment, the defendant contends that (1) the statement was involuntary and given under duress because the defendant was hung over at the time, (2) the

statement was given after Captain Gosnell told the defendant that a witness would say that the defendant had admitted killing the victim and setting fire to his mobile home, (3) the defendant's refusal to sign the waiver of rights form was tantamount to asserting his right to an attorney and to remain silent, and (4) the defendant's statement was the product of an unlawful arrest.

The defendant's contention that he was hung over and, thus, not in control of his mental faculties is contradicted by evidence introduced during a *voir dire* hearing. That evidence tended to show that the defendant was arrested at 10:27 a.m. on 4 August 1988, transported to the Lenoir County Sheriff's Department and then advised of his *Miranda* rights. At the time he was advised of his rights, the defendant did not appear to be under the influence of any drugs or alcoholic beverages, appeared to understand where he was and what was going on around him and appeared to understand what he was being asked. Evidence tended to show that he was not threatened, promised anything or offered any inducement to respond to questions. Further, evidence was introduced tending to show that the defendant asked Captain Gosnell what evidence the police had against him before Gosnell asked him any questions. Such evidence was sufficient to support a determination by the trial court that the defendant was not so hung over as to render his statement involuntary. *See State v. Jones*, 327 N.C. 439, 447, 396 S.E.2d 309, 313 (1990) (when determining whether a confession is voluntary, the court must examine the totality of the circumstances).

[8] Similarly, the defendant contends that Captain Gosnell's response to the defendant's question constituted mental duress causing the defendant to make a statement. In response to the defendant's question concerning what evidence the police had against him, Captain Gosnell told the defendant that a witness had stated that the defendant had said he set fire to Guy Warren's bed and then shot Guy Warren. It is well settled in this jurisdiction that mere confrontation of an accused with inculpatory evidence does not render any ensuing confession inadmissible. *State v. Stokes*, 308 N.C. 634, 646, 304 S.E.2d 184, 192 (1983). Here, the evidence tended to show that the defendant raised the issue of whether the State had discovered any information pointing to his guilt, and Gosnell answered truthfully. The defendant's contention is meritless.

STATE v. EASON

[328 N.C. 409 (1991)]

[9] Next, the defendant argues the statement was obtained in violation of his right to remain silent because his refusal to sign the waiver of rights form was tantamount to invoking his right to an attorney and right to remain silent. On *voir dire*, Captain Gosnell testified that the defendant was fully advised of his rights and asked if he wanted a lawyer. The defendant responded he did not want a lawyer at that time and would answer questions. When given a waiver of rights form for his signature, the defendant said he would not sign anything from the sheriff's department. Gosnell then started to ask a question, but the defendant interrupted to ask about any incriminating evidence. The trial court found from such evidence that the defendant agreed to answer questions without the presence or advice of counsel. Since this finding of fact is supported by competent evidence, it is conclusive on appeal. *State v. Chamberlain*, 307 N.C. 130, 297 S.E.2d 540 (1982). Accordingly, there is no merit to the defendant's contention that his refusal to sign the waiver was tantamount to invoking his rights to counsel and to remain silent.

[10] Finally, in support of his motion to suppress his statement, the defendant contends he was arrested without probable cause; therefore, his statement should be suppressed because it resulted from an unlawful seizure of his person. *Dunaway v. New York*, 442 U.S. 200, 60 L. Ed. 2d 824 (1979). We disagree. There was sufficient probable cause to support the warrant upon which the defendant was arrested. The defendant's mother had told Gosnell that the defendant admitted shooting the victim and setting fire to his mobile home. The mother's statements were corroborated by physical evidence and the statements of other individuals known to Gosnell. Since there was probable cause for the issuance of the warrant and for the defendant's arrest, this contention is meritless. For the foregoing reasons, the trial court did not err by denying the defendant's motion to suppress his statement. Accordingly, this assignment of error is without merit.

[11] By his next assignment of error, the defendant contends that the trial court erred by sustaining the State's objection to a question his counsel asked Captain Gosnell as to whether the victim's wife was the beneficiary of the victim's life insurance policy. The defendant contends this inquiry was relevant because it sought to elicit evidence tending to show that someone else committed the murder. We disagree.

A defendant may introduce evidence tending to show that someone other than defendant committed the crime charged, but such evidence is inadmissible unless it points directly to the guilt of the third person. Evidence which does no more than create an inference or conjecture as to another's guilt is inadmissible.

*State v. Hamlette*, 302 N.C. 490, 501, 276 S.E.2d 338, 346 (1981). To be relevant under Rule 401 of the North Carolina Rules of Evidence, such evidence must tend *both* to implicate another *and* be inconsistent with the guilt of the defendant. *State v. Cotton*, 318 N.C. 663, 667, 351 S.E.2d 277, 279-80 (1987).

After reviewing Captain Gosnell's answer, which was preserved for the record, we conclude that it fails to meet the test of relevancy under Rule 401. When asked if Denise Warren was the beneficiary of the victim's life insurance, Gosnell only responded, "To my knowledge." Even when taken in the light most favorable to the defendant, the answer only tended to show that the victim's wife was the beneficiary of his life insurance policy. Such evidence does not point directly to the guilt of another; at most, it casts suspicion upon another or raises a mere conjectural inference that the crime may have been committed by another. *State v. McDowell*, 301 N.C. 279, 292, 271 S.E.2d 286, 295 (1980). Therefore, it does not meet the Rule 401 test of relevancy. *Cotton*, 318 N.C. at 667, 351 S.E.2d at 279-80. This assignment of error is without merit.

[12]    By his next assignment of error, the defendant contends the trial court erred in allowing Melissa Bush, a nine-year-old, to testify. He argues that the trial court erred in concluding that she was competent to testify because the trial court failed to specifically find that she was capable of expressing herself concerning the matter at hand. We disagree.

There is no age below which one is incompetent as a matter of law to testify. *State v. Jones*, 310 N.C. 716, 314 S.E.2d 529 (1984). The determination of the competency of a child to testify is a matter that rests within the sound discretion of the trial court. *State v. Fearing*, 315 N.C. 167, 337 S.E.2d 551 (1985). However,

A person is disqualified to testify as a witness when the court determines that he is (1) incapable of expressing himself concerning the matter as to be understood, either directly or through interpretation by one who can understand him,

or (2) incapable of understanding the duty of a witness to tell the truth.

N.C.G.S. § 8C-1, Rule 601(b) (1988). Therefore, it is the obligation of the trial court to make a preliminary determination as to the competency of a witness when a question as to the competency of the witness is raised by a party or by the circumstances. *See Fearing*, 315 N.C. at 173, 337 S.E.2d at 555.

The defendant in the present case concedes that the trial court specifically found that Melissa Bush "appreciates the meaning of an oath, one; and two, she understands what it means to swear on the Bible and the ramifications of not telling the truth." Based on its findings and personal observation of the child, the trial court determined that Melissa Bush was competent to testify as a witness in this case. Although the trial court did not make a specific finding as to whether the child was capable of expressing herself concerning the matters as to which she was to testify, the findings made by the trial court and its conclusion that she was competent clearly establish that the trial court exercised its discretion in declaring her competent as a witness. *Cf. id.* (holding that trial court did not exercise its discretion).

As it is clear that the trial court exercised its discretion in declaring the child witness competent, its determination in this regard must be left undisturbed on appeal, absent a showing that the trial court's ruling as to the competency of the witness could not have been the result of a reasoned decision. *State v. Spaugh*, 321 N.C. 550, 364 S.E.2d 368 (1988); *State v. Rael*, 321 N.C. 528, 364 S.E.2d 125 (1988); *State v. Hicks*, 319 N.C. 84, 352 S.E.2d 424 (1987). During a *voir dire* hearing, Melissa Bush testified that she had completed the third grade and was entering the fourth, made straight A's and B's in her schoolwork and knew her address. Further, she recalled the incident when she saw the defendant with a gun and remembered who was present at the time. Even though no specific finding was made regarding Melissa's ability to express herself, it is obvious that the trial court determined that she was able to do so. Further, the record supports that conclusion. The defendant has failed to show that the trial court's ruling that Melissa Bush was competent as a witness could not have been the result of a reasoned decision. Hence, the trial court did not abuse its discretion in allowing her to testify. This assignment of error is without merit.

[13]  By his next assignment of error, the defendant contends the trial court erred by permitting Sandy Potter to testify regarding a statement the defendant made in a letter he wrote to her after the murder. The defendant contends that the statement contained in the letter was admitted without proper foundation and that the statement was too remote in time to be relevant to the issues at trial. We disagree.

During the trial, Sandy Potter testified that after the defendant was arrested and placed in jail, she and the defendant corresponded five or six times. The letters she received from the defendant were kept in her dresser drawer along with other important papers; however, after she first told Captain Gosnell about the letters, they disappeared. At the time the letters disappeared, Potter was living with the defendant's half-brother, Fred Hoffman. She testified that she recognized the letters as being in the defendant's handwriting and that they were signed "Jerry." Potter also testified that the defendant stated in one of the letters that "he was satisfied that the SOB knew who he was before he died."

A statement is admissible as an exception to the hearsay rule if it is offered against a party and is that party's own statement. N.C.G.S. § 8C-1, Rule 801(d) (1988). At trial, defense counsel admitted that the statement of the defendant was admissible as an exception to the hearsay rule. Nevertheless, the defendant now contends that the State did not properly account for the loss of the letters and failed to lay a foundation regarding the defendant's handwriting. We disagree.

Potter testified that the letters disappeared after she went to the police. At that time, she was living with the defendant's half-brother, so she did not have exclusive control over the letters when they disappeared. She also testified that she recognized the letters as being in the defendant's handwriting and that they were signed with his first name. Such evidence established a sufficient foundation for Potter's testimony.

In addition, the defendant's contention that the defendant's statement in the letter was too remote is meritless. The murder occurred on 4 August 1988. After the defendant was arrested and before his trial which began on 17 July 1989, he was evaluated at Dorothea Dix Hospital. Potter testified that she received the letter after the defendant was arrested and while he was being evaluated at Dorothea Dix Hospital. The defendant's statement

was not too remote in time to be relevant. Potter's testimony concerning the statement in the defendant's letter was admissible under Rule 801(d) of the North Carolina Rules of Evidence as an admission by a party opponent. The trial court did not err by admitting the testimony. Hence, this assignment of error is without merit.

[14] The defendant next contends that the trial court erred in denying his motion to dismiss the charge of first degree murder at the close of all evidence. The defendant argues that there was no substantial evidence tending to show that he killed Guy Warren with premeditation and deliberation.

The rules for testing the sufficiency of evidence to overcome a motion to dismiss in a criminal case have been stated in detail in numerous decisions of this Court. *E.g., State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). It would serve no useful purpose to recite those rules again in detail here. Instead, it suffices for the purposes of this case to point out that, in considering a motion to dismiss, the evidence must be taken in the light most favorable to the State with every reasonable inference drawn in favor of the State. *Id.*

Here, substantial evidence tended to show that the murder was the product of the defendant's desire for revenge. The defendant had been significantly injured in a fight with the victim approximately three weeks before the murder. Between the time of the fight and the victim's death, the defendant told several people he was going to get even. Shortly before the murder, the defendant bought a .25 caliber automatic pistol from Raeford Page. Spent .25 caliber projectiles recovered from a place where Page had fired that pistol and the three projectiles removed from the victim's body were all fired from the same gun. This evidence is more than sufficient to support a finding of premeditation and deliberation.

The defendant also contends that the trial court erred in failing to dismiss the arson charge against him. By statute, the willful and malicious burning of a mobile home which is the dwelling house of another and occupied at the time constitutes first degree arson. N.C.G.S. § 14-58 (1986). The defendant was charged with and convicted of that statutory offense. The defendant argues that in this case the mobile home was not occupied at the time it burned, because no evidence tended to show that the victim was alive at the moment when the mobile home was set on fire. Assuming,

*arguendo*, that such a showing was required in this case, we never-theless disagree with the defendant's argument.

The pathologist who examined the victim's remains testified that the victim would have been able to move for as much as two minutes after the infliction of the gunshot wounds. Afterwards, the victim would likely have lost consciousness from loss of blood. The fact that the pathologist found no sooty material in the victim's airway is not conclusive proof that the victim died before the fire was set. In fact, the pathologist testified that the lack of soot "indicated to me that there was *little* or no *fire* in the area at the time he took his last breath." (Emphasis added.) The evidence permitted the jury to find that the victim was alive when the fire was set but died before he inhaled any fumes or soot. Taken in the light most favorable to the State, the evidence supports a finding that the victim was alive when the fire was set. Accordingly, the trial court properly denied the defendant's motion to dismiss, and the defendant's contention is without merit.

[15] By his next assignment of error, the defendant contends that the trial court erred by refusing to submit possible verdicts for second degree murder, voluntary manslaughter and involuntary manslaughter to the jury. The defendant acknowledges that if the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than the defendant's denial that he committed the offense, the trial court should not submit second degree murder as a possible verdict. *State v. Strickland*, 307 N.C. 274, 298 S.E.2d 645 (1983). The State introduced evidence tending to show every element of first degree murder was present in this case. With the exception of the defendant's general denial that he had anything to do with the killing, there was no evidence to negate the State's proof as to any element of first degree murder. Accordingly, this assignment of error is without merit.

[16] By his next assignment of error, the defendant contends that the trial court erred by allowing the prosecutor to argue during his closing argument to the jury that the State's case was "uncon-tradicted." The defendant's objection to the prosecutor's argument was overruled. The defendant argues that the prosecutor's state-ment amounted to an improper comment on the defendant's failure to testify. This assignment of error is without merit. *State v. Jordan*,

305 N.C. 274, 280, 287 S.E.2d 827, 831 (1982) (prosecutor's argument that the State's evidence is uncontradicted does not constitute an improper comment upon the defendant's failure to testify).

[17] By his next assignment of error, the defendant contends that the trial court erred in refusing to grant the jury's request to "review" the testimony of the State's firearm and tool mark identification expert. The trial court, in its discretion, denied the request.

If the jury, after retiring for deliberation, requests a review of testimony or physical evidence presented during trial, the decision whether to allow the review rests within the discretion of the trial court. N.C.G.S. § 15A-1233(a) (1988). In discussing the request with the attorneys, the trial court indicated it was denying the request because it did not want to give undue emphasis to the testimony of any particular witness. We conclude that the trial court did not abuse its discretion. *See State v. Jones,* 47 N.C. App. 554, 563, 268 S.E.2d 6, 12 (1980) (same reason given by trial court held not to be an abuse of discretion).

[18] The defendant next assigns as error the trial court's denial of his motion for a probable cause hearing. The defendant was arrested on a warrant on 4 August 1988 charging him with first degree murder. A probable cause hearing was scheduled for 18 August 1988, but the State has stipulated that none was ever held. The defendant filed a motion on or about 10 January 1989 requesting a probable cause hearing. The defendant was indicted by the grand jury on 27 March 1989. Subsequently, on 8 June 1989, the defendant's motion for a probable cause hearing was heard and denied. After indictment, it is not error to try a defendant who has not received a probable cause hearing. *State v. Lester,* 294 N.C. 220, 240 S.E.2d 391 (1978). The defendant concedes this but requests that this Court reconsider its prior decisions. The defendant advances no reason for this Court to reconsider its past decisions, and we decline to do so.

[19] By his next assignment of error, the defendant contends that the trial court erred by refusing to provide him with funds to hire an investigator to assist him with his defense. In order for an indigent criminal defendant to be entitled to funds with which to hire a private investigator, the defendant must show that there is a reasonable likelihood the investigator will materially assist him in the preparation of his defense or that without such help it is probable that the defendant will not receive a fair trial. *State*

*v. Holden*, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987). In this case, the defendant did not attempt to make any such showing. The only information in the record before this Court concerning this assignment of error is two separate motions for funds to hire a private investigator. Accordingly, this assignment of error is without merit.

For the foregoing reasons, we conclude that the defendant received a trial free from prejudicial error.

## II.

### *The Defendant's Motion For Appropriate Relief*

[20]   Having dealt with the issues raised on the direct appeal by the defendant concerning his trial and conviction, we turn now to consideration of the defendant's motion for appropriate relief which was filed with this Court prior to our consideration of his appeal. On 5 April 1990, this Court partially allowed the defendant's motion for appropriate relief and remanded this case to the Superior Court, Lenoir County, for an evidentiary hearing and the entry of findings and conclusions by the superior court as to whether there was " 'newly discovered evidence' meriting a new trial."

Pursuant to this Court's order, an evidentiary hearing was held on 12 July 1990 in Superior Court, Lenoir County, before Judge James A. Strickland. Evidence introduced at that hearing tended to show that on 1 August 1989, eight days after the defendant's conviction, Captain Lester P. Gosnell of the Lenoir County Sheriff's Department interviewed Nick Russell Stroud and Tom Hagert about the Guy Warren murder. In essence, Stroud confessed to the murder of Guy Warren; however, the next day, Stroud repudiated his confession.

At the hearing, Captain Gosnell testified that Stroud and Hagert came to the Lenoir County Sheriff's Department at approximately 10:00 p.m. on 1 August 1989. Stroud was under the influence of an impairing substance and told Gosnell that he wanted to confess to the murder of "Guy Eason." After again being questioned about the identity of the murder victim, Stroud said, "I mean Guy Warren." Gosnell then advised Stroud of his constitutional rights and went through the standard *Miranda* rights form with him. While going through the rights form, Stroud told Gosnell that he did not wish to talk to him. When Gosnell questioned how Stroud was going to confess if he did not talk to him, Stroud then changed his answer

and agreed to talk. Gosnell first asked Stroud how much he had had to drink, Stroud responded that he had consumed twelve beers that day, the last one about a half an hour before coming to the sheriff's department.

Gosnell further testified that even though Stroud wanted to confess, he volunteered little information about the murder, and Gosnell had to drag the alleged details from Stroud. Stroud said he shot the victim with a Jennings .25 caliber automatic which he purchased "about three years before" from a black guy. Stroud said he threw the gun in the river at Jarman's Landing after the murder. Stroud stated that the murder was accomplished by breaking through the rear door of Warren's mobile home and shooting Warren in the back; however, Stroud did not know how many times the victim had been shot. He said he set the mattress on fire after shooting Warren. Stroud went on to add that he did not slash the tires of any truck parked outside the mobile home. He said he had not told anyone he committed the murder nor did anyone have any knowledge of his act. He stated that his reason for killing Warren was "somebody needed to do it because he [Warren] was an asshole." Stroud also stated that he knew the defendant Jerry Eason.

After interviewing Stroud, Gosnell interviewed Hagert. Hagert stated that he and Stroud had been fishing that afternoon and then went to some bars. While fishing and attending the bars, Stroud consumed about nine beers. While at the bars, Stroud discussed news reports of the just completed Eason trial with other bar patrons. After leaving the second bar, Stroud went to the home of an aunt of his former girlfriend and then to his mother's home where he told his mother he was going to confess to a murder. After talking with his mother, Stroud persuaded Hagert to take him to the sheriff's department. Gosnell recognized the aunt of Stroud's former girlfriend to be Doris Hoffman, the mother of the defendant. Hagert told Gosnell he didn't believe Stroud and thought the confession was the "beer talking." Hagert went on to say that Stroud had been having a lot of emotional problems since he had broken up with his girlfriend. In Hagert's opinion, Stroud was not in his right mind on the day he confessed because earlier Stroud had given his fishing boat to Hagert. When Gosnell completed interviewing Hagert, they went out to a waiting area where they found Stroud asleep.

On 2 August 1989, the day after Stroud confessed, Gosnell went to Stroud's home in order to take him to a polygraph examination. At that time, Stroud told Gosnell that there was no need for a polygraph examination because he had lied the night before about murdering Guy Warren. Stroud explained he had been experiencing personal problems recently and was depressed. When asked to explain the nature of his problems, Stroud stated that his ex-wife had moved to Iowa with his daughter, preventing him from seeing the child. Additionally, his girlfriend, the defendant Jerry Wayne Eason's first cousin, broke off their relationship the first day of the defendant's trial. Stroud said the breakup came as a complete surprise to him. Stroud went on to say he had been drinking heavily on a daily basis.

Further evidence at the hearing tended to show that the Warren murder and the defendant's trial generated considerable news-media coverage. The information given by Stroud in his 1 August 1989 statement had been given wide publicity by the news media.

On 3 August 1990, Judge Strickland entered "Findings of Fact and Conclusions" in which he concluded that the defendant's motion for appropriate relief for newly discovered evidence should be denied. The defendant contends that Judge Strickland erred in concluding that the post-trial confession of Nick Stroud did not constitute newly discovered evidence under N.C.G.S. § 15A-1415(b)(6) and in recommending that this Court deny the defendant's motion for appropriate relief. We disagree.

Since the defendant is the moving party under his motion for appropriate relief, he has the burden of showing by a preponderance of the evidence every fact essential to support the motion. N.C.G.S. § 15A-1420(c)(5) (1988). In order to establish that Stroud's 1 August 1989 statement constituted "newly discovered evidence" entitling him to a new trial, the defendant was required to show that (1) Stroud would give newly discovered evidence, (2) such evidence is probably true, (3) such evidence is competent, material and relevant, (4) due diligence was used and proper means were employed to procure the testimony at the trial, (5) the newly discovered evidence is not merely cumulative, (6) such evidence does not tend only to contradict a former witness or to impeach or discredit him, and (7) the evidence is of such a nature as to show that at another trial a different result will probably be reached

and that the right will prevail. *State v. Britt*, 320 N.C. 705, 713, 360 S.E.2d 660, 664 (1987).

Based upon the evidence introduced at the hearing, Judge Strickland made extensive findings and conclusions that the defendant had not made the required showing. Based upon the evidence, we adopt Judge Strickland's findings and conclusions. First, the defendant failed to establish that Stroud would give newly discovered evidence. Stroud recanted his 1 August 1989 confession the next day and stood by his disavowal throughout the hearing before Judge Strickland. Further, Stroud confessed while in a state of confusion after consuming a large quantity of beer, and the confession was without corroboration. Consequently, there is every reason to believe that at a new trial Stroud would testify that he had nothing to do with the murder of Warren.

Further, the evidence tends to show that Stroud's 1 August 1989 confession was not credible. First, evidence at the hearing tended to show that Stroud was drunk as well as depressed when he went to the sheriff's department to confess. In addition, during his statement, Stroud was confused about the name of the murder victim and had limited knowledge of the details of the crime. For example, he did not know how many times the victim had been shot. Furthermore, the evidence tended to show that Jennings .25 caliber automatic handguns were not even being manufactured at the time Stroud said he acquired the alleged murder weapon. This evidence, coupled with the fact Stroud recanted his statement and admitted that he had lied when confessing, tended to show that Stroud's confession was not truthful.

Based upon Judge Strickland's findings and conclusions, which we have adopted, we deny the defendant's motion for appropriate relief filed with this Court.

No error; motion for appropriate relief denied.