STATE OF NORTH CAROLINA v. ERIC LAWRENCE CALL

No. 341A96

(Filed 31 December 1998)

### 1. Indigent Persons § 26 (NCI4th)— capital trial—jury selection—questions by only one attorney

The trial court may properly allow only one of a capital defendant's attorneys to question jurors during *voir dire* where the court does not preclude the attorneys from consulting or communicating with one another.

### 2. Jury § 92 (NCI4th)— jury selection—two prospects in box—questioning of alternate alone—absence of prejudice

In this capital trial in which prospective jurors were called two at a time to the box during *voir dire* to speed up the selection process, defendant was not prejudiced when the trial court required defense counsel to question and determine whether to challenge the first prospective alternate juror, who remained in the box after the twelfth juror was seated, without putting a second juror in the box where defendant expressed satisfaction about the choice of this juror as an alternate, and this alternate juror did not deliberate defendant's guilt or his sentence.

### 3. Criminal Law § 418 (NCI4th Rev.)— opening statements—limit in guilt phase—not allowed at capital sentencing

The trial court did not abuse its discretion by imposing a five-minute limit on opening statements at the guilt-innocence phase of a capital trial and by forbidding any opening statement at defendant's separate capital sentencing proceeding.

### 4. Constitutional Law § 343 (NCI4th)— pretrial unrecorded bench conference—absence of defendant—no constitutional violation

Defendant's right to be present at all stages of his capital trial was not violated by pretrial unrecorded bench conferences held outside his presence prior to the trial court's ruling upon a Rule 24 pretrial conference motion in a capital case. A Rule 24 conference is not a stage of the trial, the record shows that defendant was present in the courtroom for the entire Rule 24 conference, and defendant failed to establish that his presence at the unrecorded bench conferences would have been useful.

Rule 24 of the General Rules of Practice for the Superior and District Courts.

**5. Constitutional Law § 343 (NCI4th)— unrecorded bench conference—capital trial—second counsel—absence of defendant—not constitutional violation**

Defendant's constitutional rights were not violated by an unrecorded bench conference in his absence held after a hearing on his motion to appoint second counsel to represent him in his capital trial where defendant was present at the entire hearing which was recorded, and second counsel was ultimately appointed.

**6. Constitutional Law § 344.1 (NCI4th)— unrecorded bench conference—absence of defendant—interpreted testimony—not error**

The trial court did not err in holding an unrecorded bench conference outside defendant's presence before ruling on the admissibility of a witness's interpreted testimony where defendant was present in the courtroom and his counsel was at the bench, the trial court reconstructed the bench conference for the record, and the subject matter of the bench conference was not the translation of the testimony but the factual foundation for the evidence.

**7. Constitutional Law § 344.1 (NCI4th)— in-chambers conference—absence of defendant—capital sentencing—mitigating circumstances—harmless error**

Although the trial court erred by conducting an unrecorded in-chambers conference without defendant's presence concerning the mitigating circumstances to be submitted to the jury in defendant's capital sentencing proceeding, this error was rendered harmless beyond a reasonable doubt by the trial court's action causing the record to show what had transpired at that conference.

**8. Constitutional Law § 343 (NCI4th)— preliminary handling of prospective jurors—absence of defendant—not constitutional violation**

Defendant's constitutional right to presence in his capital trial was not violated when the trial court permitted several prospective jurors to be excused, deferred, or disqualified prior to the first day of jury selection without the participation of

STATE v. CALL

[349 N.C. 382 (1998)]

either defendant or his counsel, or when the trial court presided over the removal of nine individuals from defendant's trial venire for service on a grand jury. A defendant's constitutional right to presence does not extend to the preliminary handling of prospective jurors before his own case has been called.

**9. Constitutional Law § 248 (NCI4th)— discovery—pretrial witness statements—immateriality—no Brady violation**

The trial court did not improperly permit prosecutors to withhold pretrial statements made to law officers by two witnesses in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), where neither statement was material within the purview of *Brady*. Even if the statements were discoverable, the prosecution satisfied the requirements of *Brady* by providing the defense with the statements at trial in time for defendant to make effective use of them.

**10. Evidence and Witnesses § 2479 (NCI4th)— sequestration of witnesses—motion denied—not abuse of discretion**

The trial court did not abuse its discretion in the denial of defendant's motion to sequester prosecution witnesses in this capital trial. There was no merit to defendant's contention that the court's ruling was based upon an "entirely arbitrary" reason that the courthouse could not accommodate sequestration of witnesses.

**11. Jury § 65 (NCI4th)— jury pool—instructions to grand jurors—absence of prejudice**

Defendant was not prejudiced by the trial court's instruction of new grand jurors on the function of the grand jury in the presence of the members of defendant's jury pool, five of whom eventually served on the jury that heard his case, where no mention was ever made of the indictments returned against defendant, and defendant has shown no bias on the part of the five jurors who heard the grand jury instruction.

**12. Jury § 153 (NCI4th)— capital trial—jury selection—ability to write and announce death—questions not improper**

The prosecutor in a capital case was not improperly permitted to ask prospective jurors whether they could write the word "death" on the recommendation form and could announce their verdict of death in open court, although only the jury foreperson would be required to sign the verdict form and announce the

verdict, since the questions legitimately sought to determine the jurors' ability to carry out their duties in defendant's capital trial.

### 13. Jury § 226 (NCI4th)— capital trial—jury selection—death penalty views—excusal for cause—denial of rehabilitation

The trial court properly refused to permit defendant to attempt to rehabilitate fifteen prospective jurors excused for cause for their death penalty views based upon the jurors' answers to *voir dire* questions. Furthermore, defendant cannot show prejudice from the rulings on rehabilitation where defendant requested an opportunity to rehabilitate only three of the jurors, and defendant failed to exhaust his peremptory challenges.

### 14. Jury § 190 (NCI4th)— denial of challenges for cause—failure to exhaust peremptory challenges

Defendant failed to show prejudice in the denial of his challenges for cause of three prospective jurors where the record does not show that defendant exhausted his peremptory challenges, made a renewed challenge for cause which was denied, and requested and was denied an additional peremptory challenge.

### 15. Jury § 197 (NCI4th)— excusal for cause—mental disability

The trial court did not abuse its discretion by excusing a prospective juror for cause based upon her psychological disabilities where the juror stated that she was bipolar manic-depressive, had been under mental health care since 1982, had been hospitalized, and sees a counselor regularly, and she expressed concern about her ability to serve on the jury and the impact her service might have on her mental health.

### 16. Criminal Law § 490 (NCI4th Rev.)— investigating officers—contact with jury venire—not error

The trial court did not err by permitting the two chief investigating officers in this capital case to assist the trial court by passing out Bibles to the jury venire and telling the venire which hand to raise and which hand to place on the Bible where the record does not indicate that the officers ever had custody or control of the jury or were ever with the jurors out of the presence of the trial court. This brief contact with the prospective jurors was legally insignificant.

**17. Jury § 257.1 (NCI4th)— peremptory challenges—gender discrimination—failure to make prima facie showing**

Defendant failed to establish a *prima facie* showing of intentional gender discrimination in the prosecutor's use of peremptory challenges in this capital trial where defendant made the bare assertion that the prosecutor improperly used eight of the eleven peremptory challenges he exercised to strike women from the jury panel, but the record does not reveal the gender of the jurors who heard defendant's case or the overall percentage of prospective female jurors in the venire.

**18. Evidence and Witnesses § 2618 (NCI4th)— handwritten note by defendant—exoneration of wife—spousal privilege inapplicable**

A handwritten note left by defendant at a friend's house stating that defendant's wife had no knowledge "of what might have taken place" was not a confidential communication protected by spousal privilege where defendant's wife did not testify and her statements to the police were not presented as evidence at trial; defendant did not claim the privilege at trial but attempted to show that he was not the author; and it is clear from the language in the note that defendant did not leave the note for his wife but for anyone who might suspect his wife of wrongdoing. Furthermore, the spousal privilege did not prohibit the friend from testifying that defendant told him about the note and that the note was found in the friend's home.

**19. Constitutional Law § 164 (NCI4th)— no knowing use of false testimony by State**

The record did not show that the contents of a note purportedly handwritten by defendant, and thus the inferences raised by those contents, were false or that the prosecutor knowingly used false evidence to convict defendant.

**20. Appeal and Error § 147 (NCI4th)— legality of search warrant—issue not preserved for appeal**

Defendant waived appellate review of issues as to the legality of a search warrant used to obtain handwriting exemplars where defendant failed to challenge the legality of the search warrant either before or at trial, and defendant did not object to the admission of the handwriting exemplars into evidence or make a motion to suppress a handwritten note to which the exemplars were compared.

**21. Evidence and Witnesses § 2399 (NCI4th)— interpreter— qualification**

There was plenary evidence to support the trial court's conclusion that an interpreter was qualified to interpret the testimony of a Spanish-speaking witness where the interpreter was originally from Venezuela and his native tongue was Spanish; he taught Spanish at Wilkes Community College and has been translating in the North Carolina court system for the past eight years; and he has lived in both South and Central America and is familiar with several Hispanic dialects.

**22. Evidence and Witnesses § 2511 (NCI4th)— witness not fluent in English—competency to testify about conversation**

A witness who was not fluent in English was not incompetent to testify that defendant offered a murder victim $25.00 to help him move some furniture on the night of the murder where the record shows that the witness was able to understand a few English words and phrases; defendant spoke a mixture of English and Spanish on the night of the murder; and this was a short, simple conversation, the gist of which defendant repeated to the witness in a manner he could understand a few hours later.

**23. Criminal Law § 514 (NCI4th Rev.)— tape recording of prosecution testimony by defendant—denial of request**

The trial court did not err by denying defendant's request to tape record the testimony of prosecution witnesses in order to assist defense counsel in preparing for cross-examination where the court chose to rely upon the court reporter's recordation of the proceedings and the court provided a complete and accurate record of defendant's trial. Superior and District Court Rule 15(b)(1).

**24. Appeal and Error § 439 (NCI4th)— submission of transcript—admission of evidence—absence of appendix or reproduction in brief—waiver of appellate review**

Defendant's assignments of error that the trial court erred by permitting several witnesses to testify about out-of-court statements in violation of the hearsay rule were deemed waived for failure to comply with Appellate Rule 28(d) where the transcript of the proceedings was filed pursuant to Rule 9(c)(2); defendant cites several pages of the transcript but has not identified the specific questions or answers which he wants the appellate court to review for error; and defendant has failed to attach the pertinent

portions of the transcript containing the examinations complained of as an appendix to his brief or to include a verbatim reproduction of those questions or answers in his brief.

**25. Evidence and Witnesses § 873 (NCI4th)— telephone conversation—explanation of subsequent actions—not hearsay evidence**

Testimony by a witness regarding a telephone conversation he had with his mother about a person who showed up at her home the morning after he was assaulted by defendant was properly admitted as nonhearsay evidence where it was admitted for the limited purposes of showing what the witness did after having the conversation with his mother and why he went to her home and of corroborating the assault victim's testimony.

**26. Evidence and Witnesses § 887 (NCI4th)— statements by witness to officer—incrimination of defendant—admissible for corroboration**

The trial court did not err by allowing an officer to testify regarding out-of-court statements a witness made to him that incriminated defendant where the testimony was offered only for corroborative, nonhearsay purposes, and the trial court instructed the jury on the permissible use of this evidence.

**27. Evidence and Witnesses § 2917 (NCI4th)— impeachment— cross-examination not unduly restricted**

The trial court did not unduly restrict defendant's cross-examination of witnesses by sustaining the prosecutor's objections (1) to questions regarding inconsistencies in a witness's testimony and his prior statements to officers where officers had reduced the prior statements to a narrative which attributed the substance of statements to the witness but did not use his actual words, and (2) to questions about whether the witness had a history of domestic violence for which he had not been convicted, since such evidence had no bearing on his truthfulness or untruthfulness in this case and was not proper for impeachment.

**28. Evidence and Witnesses §§ 263, 3121 (NCI4th)— cigarette rolling paper and beer cans at murder scene—not character evidence—crime scene and corroboration**

Testimony in a murder prosecution that cigarette rolling paper and beer cans were found at the edge of a cornfield near

STATE v. CALL

[349 N.C. 382 (1998)]

the spot at which the murder victim's body was discovered was not improper character evidence but was properly admitted to show a portion of what officers found at the crime scene and to corroborate an assault victim's testimony where the State's evidence tended to show that defendant lured the assault victim to the same location and tried to kill him; defendant offered the assault victim a beer and smoked cigarettes while at the cornfield; and the jury could reasonably infer from this evidence that defendant also offered the murder victim a beer and smoked cigarettes around the time of the killing.

**29. Evidence and Witnesses § 716 (NCI4th)— prosecutor's questions—objections sustained—absence of prejudice**

Defendant can show no prejudice from the prosecutor's questions where his objections to the questions were sustained.

**30. Evidence and Witnesses § 1685 (NCI4th)— autopsy photographs—no abuse of discretion—waiver of appellate review**

The trial court did not abuse its discretion in admitting six autopsy photographs of a murder victim for the purpose of illustrating the testimony of the pathologist. Furthermore, defendant waived appellate review of this issue by failing to object to the court's ruling at trial and failing to argue plain error. N.C. R. App. P. 10(c)(4).

**31. Criminal Law § 474 (NCI4th Rev.)— prosecutor's closing arguments—autopsy photographs—trial and capital sentencing**

It was not grossly improper for the prosecutor to use autopsy photographs, which had been properly introduced as evidence, during closing arguments in both the first-degree murder trial and the subsequent capital sentencing proceeding.

**32. Evidence and Witnesses § 2750.1 (NCI4th)— opening door to testimony**

Defendant opened the door to testimony by a murder victim's employer about the good qualities of the victim, including that he sent money home to his family, when he solicited similar information, including what the victim did with his money, during cross-examination of the victim's nephew.

**33. Appeal and Error § 155 (NCI4th)— admission of testimony—waiver of appellate review**

Defendant waived appellate review of the admission of testimony where defendant failed to object to the testimony at trial and to argue plain error. N.C. R. App. P. 10(b)(1), 10(c)(4).

**34. Appeal and Error § 341 (NCI4th)— authentication issue— not presented by assignment of error—failure to object**

The issue of the authentication of a baseball bat introduced at trial was not presented for appellate review where defendant's assignment of error does not present authentication of the bat as an issue for appellate review, and defendant made no objection to the introduction or authentication of the bat at trial. N.C. R. App. P. 10(a).

**35. Homicide § 266 (NCI4th)— felony murder—armed robbery—taking element—sufficiency of evidence**

There was sufficient evidence of the taking element of armed robbery to support defendant's conviction of felony murder where the State's evidence tended to show that defendant told a friend about his plan to rob the victim and later told him about what happened at the time of the murder; defendant suddenly had enough money to give his friend $210.00 and to pay for a hotel room in Monroe in cash; and the victim, who was known to carry a large sum of money, was found dead with only $9.00 in his possession.

**36. Kidnapping and Felonious Restraint § 16 (NCI4th)— removal element—fraudulent means**

Evidence tending to show that defendant lured a murder victim away from his home under the false pretense of earning money by moving furniture constituted sufficient evidence of a removal to sustain defendant's kidnapping conviction.

**37. Criminal Law § 467 (NCI4th Rev.)— prosecutor's closing argument—no misstatement of facts—inferences from evidence**

The prosecutor's closing arguments in a capital trial concerning a tire impression at the crime scene, blood spattering, an explanation of the absence of a significant amount of blood, and the number of blows suffered by the victim were proper arguments of the facts in evidence or reasonable inferences taken therefrom.

**38. Criminal Law § 472 (NCI4th Rev.)— prosecutor's closing argument—flight of defendant—appellate decision**

The prosecutor did not improperly argue that the jury could rely on biblical authority to weigh defendant's flight as evidence of his guilt; rather, the prosecutor was quoting from and relying on a decision of the N.C. Supreme Court to explain the significance of flight to the jury.

**39. Criminal Law § 432 (NCI4th Rev.)— prosecutor's closing argument—rebuttal of defendant's theory—not comment on post-arrest silence**

The prosecutor was attempting to rebut defendant's theory of the case that the victim was killed by defendant's friend rather than by defendant and did not improperly comment on defendant's post-arrest silence by arguing that defendant's friend did not change his appearance and his name and leave town, although defendant did all those things, and that the friend gave the police a complete statement, contrary to what a guilty person might do.

**40. Criminal Law § 431 (NCI4th Rev.)— prosecutor's closing argument—failure to present promised evidence**

The prosecutor's comments during closing argument on defendant's failure to produce evidence promised in defense counsel's opening statement were not so grossly improper as to require the trial court to intervene on its own motion.

**41. Criminal Law § 452 (NCI4th Rev.)— prosecutor's closing argument—not request for conviction based on worth and impact**

The prosecutor did not improperly ask the jury to convict defendant of first-degree murder based upon the victim's worth as a person and the impact of his death on his friends; rather, the prosecutor properly urged the jurors to remember that the victim had been brutally beaten to death, that he was not simply a corpse, and that both defendant and the State were entitled to a fair trial.

**42. Criminal Law § 474 (NCI4th Rev.)— prosecutor's closing argument—use of introduced items—showing of premeditation and deliberation**

The prosecutor's use in his closing argument in a first-degree murder trial of items that had been introduced into evidence,

including pieces of a shovel handle, a metal rod, and a baseball bat, in an attempt to show premeditation and deliberation was not so grossly improper that the trial court was required to intervene on its own motion.

**43. Appeal and Error § 150 (NCI4th)— instructions—constitutional errors—waiver of appellate review**

Defendant waived appellate review of alleged constitutional errors in the trial court's instructions to the jury in this prosecution for first-degree murder and other crimes where defendant failed to raise any constitutional claims at trial and is barred from raising them for the first time on appeal; defendant failed to object to the instructions either during the charge conference or before the jury retired; and defendant failed to specifically and distinctly argue plain error. N.C. R. App. P. 10(b)(2), 10(c)(4).

**44. Indictment, Information, and Criminal Pleadings § 54 (NCI4th)— name of victim—fatal variance**

There was a fatal variance where the indictment charged assault with a deadly weapon with intent to kill inflicting serious injury upon Gabriel Hernandez Gervacio and the evidence at trial revealed the assault victim's correct name as Gabriel Gonzalez.

**45. Criminal Law § 432 (NCI4th Rev.)— capital sentencing— prosecutor's closing argument—absence of confession and lack of remorse—violation of right to silence**

The trial court erred in a capital sentencing proceeding by allowing the prosecution to argue that defendant should be sentenced to death based upon improperly elicited testimony from four of defendant's jailers that he had not confessed or expressed remorse. The testimony by the jailers violated the rule in *Doyle v. Ohio*, 426 U.S. 610, and should have been excluded because it resulted in an unconstitutional use of defendant's exercise of his right to silence where the judge at defendant's first appearance informed him of his right to remain silent; defendant never waived that right; defendant made no statement of any kind to any officer who arrested him or investigated his case; defendant did not testify at either the guilt phase or the capital sentencing proceeding; and defendant did not present any evidence or argument regarding statements made by defendant relating to the crimes or his feelings or attitude toward the victim.

**46. Criminal Law § 1346 (NCI4th Rev.)— capital sentencing— aggravating circumstances—kidnapping and pecuniary gain—not improper double counting**

The trial court did not permit the jury to engage in improper "double counting" by submitting to the jury both the (e)(5) aggravating circumstance that the murder was committed while defendant was engaged in the commission of a kidnapping and the (e)(6) aggravating circumstance that the murder was committed for pecuniary gain where it is clear from the record that the trial court did not allow the jury to find both aggravating circumstances using exactly the same evidence, and both circumstances were supported by sufficient, independent evidence apart from that which overlapped. N.C.G.S. § 15A-2000(e)(5), (e)(6).

Justice WYNN did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Rousseau, J., on 23 July 1996 in Superior Court, Ashe County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments was allowed by the Supreme Court on 2 September 1997. Heard in the Supreme Court 28 May 1998.

*Michael F. Easley, Attorney General, by Gail E. Weis, Assistant Attorney General, for the State.*

*Barry J. Fisher for defendant-appellant.*

MITCHELL, Chief Justice.

On 9 October 1995, defendant was indicted for first-degree murder. On 18 March 1996, he was also indicted for robbery with a dangerous weapon, first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. Defendant was tried capitally at the 15 July 1996 Criminal Session of Superior Court, Ashe County. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The jury also found defendant guilty of robbery with a dangerous weapon, first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. Following a separate capital sentencing proceeding, the jury recommended a sentence

of death for the first-degree murder conviction. On 23 July 1996, the trial court sentenced defendant to death. The trial court also sentenced defendant to a concurrent sentence of sixty-three to eighty-five months imprisonment for the kidnapping conviction and to consecutive sentences of fifty-five to seventy-five months imprisonment for the robbery conviction and twenty-five to thirty-nine months imprisonment for the assault conviction. Defendant appealed his conviction for first-degree murder and death sentence to this Court as of right. On 2 September 1997, this Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of the remaining convictions.

On 15 May 1997, defendant filed a petition for writ of certiorari in this Court seeking review of the trial court's order denying his request to supplement the trial transcript with the instructions given to newly selected grand jurors by the trial court. This Court entered an order on 23 July 1997 denying defendant's petition. On 25 August 1997, defendant filed a motion for reconsideration of his first petition, as well as a second petition for writ of certiorari seeking review of the trial court's order settling the record on appeal. On 9 October 1997, this Court entered an order dismissing defendant's motion for reconsideration of his first petition for writ of certiorari, but allowing his second petition for the limited purpose of expanding the record on appeal to include the statements of Gabriel Gervacio, Alan Varden, and Virginia Call.

The State's evidence tended to show, *inter alia*, that around 9:30 p.m. on 24 August 1995, defendant offered the victim, Macedonio Hernandez Gervacio,[1] $25.00 to help him move some things. Macedonio left the trailer he shared with his nephew, Gabriel Gervacio, and went with defendant. Defendant took Macedonio to a nearby cornfield with the intention of robbing him. While there, defendant beat Macedonio to death with a shovel handle and a tire iron, tied his right foot up around his head, and tied his hands behind his back. Later that same evening, defendant lured Gabriel Gervacio using the same ruse to the same cornfield to kill him because Gabriel

---

1. Defendant was indicted for the kidnapping, robbery, and murder of Macedonio Hernandez Gervacio. However, there was testimony presented at trial that the murder victim's full name was Macedonio Gervacio Gonzalez Hernandez. The transcript and the record clearly demonstrate that the victim was Macedonio Hernandez Gervacio. The confusion at trial with respect to the proper order of the murder victim's name arose from the custom in some Spanish-speaking countries of placing surnames so that they do not appear as what are often referred to as "last names" in English-speaking countries.

could place defendant with the victim. Defendant struck Gabriel in the head with a baseball bat, but was unable to subdue him. Gabriel escaped into the cornfield, where he hid all night. The next morning, Gabriel showed up at the house of Mrs. Clyde Reeves seeking assistance. Eventually, law enforcement officials were called in, and an investigation uncovered Macedonio's body.

In the weeks prior to 24 August, defendant discussed robbing Macedonio with his friend Alan Varden in an effort to recruit Varden's help. After killing Macedonio, defendant again made an attempt to obtain Varden's assistance, this time in murdering Gabriel. Although he refused to help defendant commit either crime, the baseball bat defendant used to assault Gabriel belonged to Varden. Following the assault of Gabriel, defendant returned home; told his wife, Virginia "Jennie" Call, and Varden what had happened; and packed some clothes. The three of them then went to Varden's trailer, where defendant shaved off his beard and mustache. Defendant told his wife and Varden that he was going to Monroe or Charlotte. He also returned the bat to Varden, who wiped it off. Subsequently, defendant checked into the Knight's Inn Motel in Monroe, under the name "Richard Finley," where he was later arrested.

## PRETRIAL AND JURY-SELECTION PHASE

[1] By an assignment of error, defendant contends that the trial court erred by allowing only one of his two attorneys to participate in *voir dire*. We find no error. The trial court may properly allow only one of a capital defendant's attorneys to question jurors during *voir dire* where the court does not preclude the attorneys from consulting or communicating with one another. *State v. Fullwood*, 343 N.C. 725, 472 S.E.2d 883 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 339 (1997). In this case, the record reveals that defendant's attorneys were free to confer with one another, and the only limitation placed upon his second counsel was in the actual questioning of the prospective jurors. Furthermore, defendant does not argue, and the record fails to show, that the trial court's ruling compelled defendant to accept any juror to which he had valid objections.

[2] By this same assignment of error, defendant argues that the trial court imposed unreasonable procedural requirements upon defense counsel throughout the trial. Defendant first complains about the jury-selection process. The trial court proposed that prospective jurors be called two at a time to the box during *voir dire* to speed up the selection process. Defendant agreed to this procedure, and this

method was used to pick the jury that heard his case. After the twelfth juror was seated, there was one remaining juror in the box. Defendant contends that the trial court improperly required defense counsel to question and determine whether to challenge this remaining juror—the first prospective alternate juror—without putting a second juror in the box. This contention is without merit.

This Court has consistently held that the trial court has broad discretion to regulate jury *voir dire. State v. Fletcher,* 348 N.C. 292, 500 S.E.2d 668 (1998). In order to establish reversible error, defendant must show that the trial court abused its discretion and that defendant was prejudiced thereby. *Id.* In this case, defendant expressed satisfaction with the juror about whom he now complains, as this juror became the first alternate juror. Furthermore, this particular juror, as an alternate, did not deliberate either defendant's guilt or his sentence. Thus, defendant cannot show prejudice.

[3] Defendant further contends that it was error for the trial court to impose a five-minute time limit on opening statements at the guilt-innocence phase and to forbid any opening statement whatsoever at defendant's separate capital sentencing proceeding. In addition, defendant complains that the trial court did not provide adequate time to review Gabriel's statement prior to cross-examination. These contentions are also without merit.

Control over opening statements rests within the sound discretion of the trial court. *State v. Speller,* 345 N.C. 600, 481 S.E.2d 284 (1997). Similarly, whenever a witness statement is delivered to a defendant as provided by the rules of discovery, the trial court may, upon request of the defendant, "recess proceedings in the trial for a period of time that it determines is reasonably required for the examination of the statement by the defendant and his preparation for its use in the trial." N.C.G.S. § 15A-903(f)(3) (1997). Here, defendant does not argue, and the record fails to show, any abuse of discretion in either ruling by the trial court. Finally, defendant fails to cite, and we do not find, any authority that he is entitled to an additional opening statement during the sentencing phase. For the foregoing reasons, this assignment of error is overruled.

[4] By another assignment of error, defendant contends that the trial court erred by conducting numerous bench conferences and pretrial proceedings off the record and without his presence, sometimes to the exclusion of defense counsel. Specifically, defendant complains

of bench conferences which were held outside his presence prior to the trial court's ruling upon, among other things, a pretrial Rule 24 motion, defendant's motion for appointment of additional counsel, the admissibility of Gabriel's interpreted testimony, and corrections and additions to the capital sentencing Issues and Recommendation form.

Even though the Confrontation Clause in Article I, Section 23 of the North Carolina Constitution guarantees a criminal defendant the right to be present in person at every stage of his capital trial, this right does not arise prior to the commencement of trial. *State v. Chapman*, 342 N.C. 330, 464 S.E.2d 661 (1995), *cert. denied*, 518 U.S. 1023, 135 L. Ed. 2d 1077 (1996). A Rule 24 conference, which takes place prior to the selection and swearing-in of the jury panel, is not a stage of the trial. *Id.* We note that the record shows defendant was present in the courtroom for the entire Rule 24 conference. Moreover, the burden is on defendant to establish that his presence at the unrecorded bench conferences would have been useful, which he has failed to show. *Speller*, 345 N.C. 600, 481 S.E.2d 284.

[5] Similarly, defendant can show no violation of his constitutional rights based upon the hearing on his motion to appoint second counsel. The record shows defendant was present for the entire hearing, which was recorded. Moreover, second counsel was ultimately appointed, even though defendant was already represented by retained counsel. Defendant has not demonstrated that the unrecorded bench conference, which took place after the hearing was concluded, implicated either his right to presence or his right to complete recordation.

[6] We now turn to defendant's complaint of an unrecorded bench conference held during Gabriel's testimony. Defendant makes a bare assertion that the trial court erroneously admitted the improperly interpreted testimony of Gabriel pursuant to rulings made during this conference. However, defendant does not argue, and the record fails to show, that the interpreter was not qualified or that Gabriel's testimony was incorrectly translated. We note, furthermore, that the trial court reconstructed the bench conference for the record, *sua sponte*. The subject matter of the bench conference was not the translation of Gabriel's testimony, but the factual foundation for the evidence. Accordingly, we find no error.

[7] Defendant next contends that the trial court improperly held an unrecorded bench conference regarding corrections and additions to

the capital sentencing Issues and Recommendation form. During the sentencing charge conference, defendant offered all of his proposed mitigating circumstances in court and on the record. The trial court then held a conference in chambers regarding the circumstances. Defendant argues that the trial court erred by following this procedure. We agree.

"It is well settled that Article I, Section 23 of the Constitution of North Carolina guarantees a criminal defendant the right to be present at every stage of his trial." *State v. Boyd*, 343 N.C. 699, 718, 473 S.E.2d 327, 337 (1996), *cert. denied*, ——— U.S. ———, 136 L. Ed. 2d 722 (1997). This Court has recognized that the right to presence cannot be waived in capital cases and includes chambers conferences with counsel. *Id.* Accordingly, we have found error where the trial court conducted in-chambers conferences in defendant's absence even though counsel for both the State and defendant were present. *State v. Exum*, 343 N.C. 291, 470 S.E.2d 333 (1996). However, this kind of error may not always warrant a new trial. The State carries the burden of showing that the error was harmless beyond a reasonable doubt. *Id.* We conclude that the State has met this burden in the present case.

In this case, the entire in-chambers conference was reconstructed for the record, at defendant's request and in his presence, providing him ample opportunity to make any objections or comments to his attorneys. We have reviewed the record and conclude that although the trial court erred by conducting the conference in defendant's absence, this error was rendered harmless beyond a reasonable doubt by the trial court's action causing the record to show what had transpired at that conference.

Defendant also lists several transcript citations to numerous other bench conferences; however, he makes no argument in support of his contention that those conferences violated his right to presence. We have thoroughly reviewed the record and find no error. Defendant was present in the courtroom, and his counsel was at the bench for each conference. This Court has previously held that "a defendant's constitutional right 'to be present at all stages of his capital trial is not violated when, with defendant present in the courtroom, the trial court conducts bench conferences, even though unrecorded, with counsel for both parties.' " *Speller*, 345 N.C. at 605, 481 S.E.2d at 286 (quoting *State v. Buchanan*, 330 N.C. 202, 223, 410 S.E.2d 832, 845 (1991)).

**[8]** Defendant further argues under this assignment of error that the trial court erred by permitting several prospective jurors to be excused, deferred, or disqualified prior to the first day of jury selection without either defendant's participation or that of his counsel. He also complains that the trial court discussed the qualification process, heard and ruled on requests to be excused, and presided over the removal of nine individuals from defendant's trial venire for service on a grand jury. However, defendant's constitutional right to presence does not extend to the preliminary handling of prospective jurors before his own case has been called. *State v. Workman*, 344 N.C. 482, 476 S.E.2d 301 (1996). Accordingly, we overrule this assignment of error.

**[9]** By another assignment of error, defendant complains that the trial court improperly allowed prosecutors to withhold pretrial statements made to law enforcement officers by prosecution witnesses Alan Varden and Virginia Call. Defendant contends that the statements contain favorable evidence that the prosecution was obligated to turn over to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215 (1963). We disagree.

In *Brady*, the United States Supreme Court held that the prosecution may not suppress favorable evidence which is material to the guilt or punishment of a defendant without violating due process. *Id.* Evidence is considered material only if there is a "reasonable probability" of a different result had the evidence been disclosed to the defense. *Kyles v. Whitley*, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 496 (1995). After thoroughly reviewing the statements in the amended record, we do not believe that either statement was material within the Supreme Court's meaning under *Brady*. At most, Virginia Call's statement suggested that defendant did not have the courage to murder Macedonio. However, both statements still tended to establish defendant's guilt. Even assuming, *arguendo*, that the statements were discoverable, the prosecution satisfied the requirements under *Brady* by providing the defense with the statements at trial in time for defendant to make effective use of them. Virginia Call was not called as a witness, and Alan Varden was cross-examined about his statement. Thus, defendant cannot show that he was prejudiced. This assignment of error is overruled.

**[10]** By another assignment of error, defendant contends that the trial court erred by denying his motion to sequester prosecution witnesses, including Alan Varden. More specifically, defendant argues

that the trial court's ruling was based upon an "entirely arbitrary" reason: that the courthouse could not accommodate sequestration of the witnesses. We do not agree.

A ruling on a motion to sequester witnesses rests within the sound discretion of the trial court, and the court's denial of the motion will not be disturbed in the absence of a showing that the ruling was so arbitrary that it could not have been the result of a reasoned decision. *State v. Ball*, 344 N.C. 290, 474 S.E.2d 345 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 561 (1997). In this case, defendant has shown no abuse of discretion. Moreover, although defendant claims that the denial of his motion to sequester violated a number of his state and federal constitutional rights, he made no constitutional claim at trial. Constitutional questions not raised and ruled upon at trial shall not ordinarily be considered on appeal. *State v. Gibbs*, 335 N.C. 1, 436 S.E.2d 321 (1993), *cert. denied*, 512 U.S. 1246, 129 L. Ed. 2d 881 (1994). Accordingly, this assignment of error is overruled.

[11] By his next assignment of error, defendant contends that the trial court erroneously instructed new grand jurors on the function of the grand jury in the presence of the members of his jury pool, five of whom eventually served on the jury that heard his case. Specifically, defendant argues that those five aforementioned venire members may have been induced into giving undue weight to the fact that defendant was indicted when they decided his guilt. We disagree.

No mention was ever made of the indictments returned against defendant. Nor has defendant shown any bias on the part of the five jurors who heard the grand jury instruction. We have previously stated that "mere observation by the jury of other lawful courtroom processes will not be presumed to result in prejudice to defendant." *State v. Sparks*, 297 N.C. 314, 255 S.E.2d 373 (1979). This assignment of error is overruled.

[12] By another assignment of error, defendant contends that the prosecutor improperly asked prospective jurors if they could write the word "death" on the recommendation form and if they could announce their verdict of death in open court. He argues that this "improper extraction of promises" erroneously informed the jurors that they would each be required to sign the verdict form and announce the verdict when only the foreperson would be required to do so. We find no error.

This issue was addressed by this Court in *State v. White*, 343 N.C. 378, 471 S.E.2d 593, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 229 (1996). The defendant in *White* argued that the prosecutor improperly asked a prospective juror whether he could "come back into the courtroom, given [his] religious beliefs, and stand up in front of this man and say, 'I sentence you to be executed.' " *Id.* at 386, 471 S.E.2d at 598. We concluded that although the question exaggerated "the juror's actual role in the sentencing process, [it] was fairly aimed at determining the extent of [the juror's] reservations about imposing the death penalty." *Id.* at 387, 471 S.E.2d at 598. In this case, we conclude that the prosecutor's questions legitimately sought to determine the jurors' ability to carry out their duties in defendant's capital trial. Therefore, this assignment of error is overruled.

[13] Defendant next contends that the trial court improperly refused to permit him to question fifteen prospective jurors before excusing them for cause based upon their opposition to the death penalty. In a number of instances, defendant argues, the venire members' responses to questioning were ambiguous and required further interrogation. Defendant's contentions are without merit.

The decision whether to allow a defendant an opportunity to rehabilitate a prospective juror challenged for cause rests within the sound discretion of the trial court. *State v. Stephens*, 347 N.C. 352, 493 S.E.2d 435 (1997), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3231 (1998). In this case, defendant cannot show an abuse of that discretion. The trial court properly denied any attempt to rehabilitate based upon the fifteen prospective jurors' answers to *voir dire* questions. Thus, defendant can show no error.

Even assuming defendant could show error, the record shows that he requested an opportunity to rehabilitate only three of the fifteen prospective jurors. The record further reveals that defendant did not exhaust his peremptory challenges. This demonstrates defendant's satisfaction with the jury which was empaneled, and he cannot show prejudice from the trial court's rulings on rehabilitation. *State v. Miller*, 339 N.C. 663, 455 S.E.2d 137, *cert. denied*, 516 U.S. 893, 133 L. Ed. 2d 169 (1995). This assignment of error is overruled.

[14] By another assignment of error, defendant contends that the trial court improperly failed to remove prospective jurors Fore, Faw, and Fairchild for cause. Defendant argues that these three prospective jurors were biased against defendant by virtue of their opinions

about his guilt, exposure to pretrial publicity, or affiliations with prosecution witnesses.

In order to show prejudice by the denial of his challenge for cause, defendant must show that he exhausted his peremptory challenges, made a renewed challenge for cause which was denied, and requested and was denied an additional peremptory challenge. *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994). An examination of the record reveals defendant did not satisfy any of the foregoing requirements for appellate review. Thus, defendant has waived this assignment of error.

[15] Defendant next contends that the trial court erroneously removed prospective juror Nancy Cooper for cause based upon her psychological disabilities. More specifically, defendant argues that the record does not establish that Ms. Cooper's mental-health problems would have prevented her from serving as a juror. We disagree.

Before *voir dire* began, the trial court welcomed the venire and explained the qualifications for service as a juror, which included a requirement that each juror be "physically and mentally competent." When the trial court asked if all of the prospective jurors met those requirements, Ms. Cooper asked to approach the bench to discuss her personal health. Later, when the trial court asked if there were any claims of undue hardship, Ms. Cooper again raised her hand. She explained that she was bipolar manic-depressive, had been under the care of New River Mental Health since 1982, had been hospitalized, and sees a counselor regularly. The trial court excused her from jury service.

Decisions concerning the excusal of prospective jurors are matters ordinarily left to the sound discretion of the trial court. *State v. Neal*, 346 N.C. 608, 487 S.E.2d 734 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 131 (1998). In this case, the trial court did not abuse its discretion by excusing prospective juror Cooper. It is apparent from the record that Ms. Cooper was herself concerned about her ability to serve on the jury and the impact which service might have on her mental health. Moreover, as we noted above, defendant expressed his satisfaction with each of the jurors who decided his case. Accordingly, this assignment of error is overruled.

[16] By another assignment of error, defendant contends that the trial court erred by authorizing two law enforcement officers who were potential prosecution witnesses at trial to have *ex parte* contact

with prospective jurors and failed to take corrective action when it learned of such contact. Specifically, defendant complains that on the morning his trial began, the two chief investigating officers in this case, Captain Steve Houck and Detective Peyton Colvard, assisted the trial court by passing out Bibles to the venire. Although the trial court instructed the officers not to have further contact with prospective jurors, defendant argues that the court erred by not questioning the venire members about the nature and extent of the contact and whether it would affect their ability to be fair and impartial. This argument is without merit.

This Court has held that in cases where witness contact with the jury occurs, "prejudice will be conclusively presumed only 'where a witness for the State acts as custodian or officer in charge of the jury.'" *State v. Flowers*, 347 N.C. 1, 20, 489 S.E.2d 391, 402 (1997) (quoting *State v. Jeune*, 332 N.C. 424, 431, 420 S.E.2d 406, 410 (1992)), *cert. denied,* —— U.S. ——, 140 L. Ed. 2d 150 (1998). In order for this Court to determine whether the witness acted in such capacity, we must look to the facts and circumstances surrounding the case and not just to the actual lawful authority of the witness. *Id.* In the case at bar, the record does not indicate that Captain Houck and Detective Colvard ever had custody or control of the jury or were ever with the jurors out of the presence of the trial court. Their contact with the jurors merely consisted of passing out Bibles and telling the venire members which hand to raise and which hand to place on the Bible. We conclude that this brief contact was legally insignificant.

[17] By another assignment of error, defendant contends that the prosecutor improperly discriminated on the basis of gender by using eight of the eleven peremptory challenges he exercised to strike women from the jury panel. Defendant argues that this "highly disproportionate striking pattern" establishes a *prima facie* case of gender discrimination. We disagree.

"As with race-based *Batson* claims, a party alleging gender discrimination must make a *prima facie* showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike." *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 144-45, 128 L. Ed. 2d 89, 106-07 (1994). This Court has held that the same type of factors which may be relevant in determining whether a *Batson* violation has occurred are relevant in resolving whether a defendant has established a *prima facie* showing of intentional gender discrimination. *State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied,* —— U.S. ——, 139 L. Ed. 2d 177 (1997). These

factors include the gender of the defendant, the victim and any key witnesses; questions and comments made by the prosecutor during jury selection which tend to support or contradict an inference of gender discrimination; the frequent exercise of peremptory challenges to prospective jurors of one gender that tends to establish a pattern, or the use of a disproportionate number of peremptory challenges against venire members of one gender; whether the State exercised all of its peremptory challenges; and the ultimate gender makeup of the jury. *Id.* at 671, 483 S.E.2d at 410.

In the case *sub judice*, defendant does not raise any of the aforementioned factors other than his bare assertion that the prosecution utilized eight peremptory challenges in an improper fashion. We note that the record does not reveal the gender of the jurors that heard defendant's case or the overall percentage of prospective female jurors in the venire. Based upon this record, we cannot conclude that defendant established a *prima facie* showing of gender discrimination in the jury selection process in this case. Thus, this assignment of error is overruled.

## GUILT-INNOCENCE DETERMINATION

By another assignment of error, defendant makes several arguments regarding the admission into evidence at his trial of a handwritten note and handwriting exemplars. First, defendant contends that the note was inadmissible because it was protected by spousal privilege. Second, defendant argues that the prosecution allowed a witness to perjure himself through his testimony regarding the note. Defendant also claims that the warrant for handwriting exemplars was improperly issued because the application for it relied on privileged communications and because the magistrate applied the wrong standard for determining probable cause. These contentions are without merit.

[18] The note at issue read: "I Eric Call hearby [sic] declare that my wife Virginia Cox Call had absulutly [sic] no knolede [sic] of what might have taken place," and was signed "Eric L Call." At trial, Alan Varden testified that he found the note in his residence and turned it over to police. Notwithstanding this testimony, defendant complains that the affidavit in support of the application for the writing exemplars stated that Virginia Call gave the note to investigators. Based on the foregoing, defendant argues that the note was a confidential communication protected by spousal privilege and was thus inadmissible against him. We disagree.

A witness-spouse may not voluntarily testify regarding confidential communications over the objection of the defendant-spouse who asserts the privilege. *State v. Holmes*, 330 N.C. 826, 412 S.E.2d 660 (1992). In this case, however, Mrs. Call did not testify, nor were her statements to police presented as evidence at trial. We note, significantly, that defendant did not claim the privilege at trial. Rather, he contested the evidence presented by attempting to show he was not the author.

Furthermore, spousal privilege does not bar those nonconfidential, out-of-court statements introduced against a defendant-spouse for the State through a third party. *State v. Rush*, 340 N.C. 174, 456 S.E.2d 819 (1995). The trial court in this case properly allowed Varden to testify that defendant told him about the note and that the note was found in Varden's home. In addition, it is clear from the language of the note that defendant did not leave the note for Mrs. Call, but for anyone who might suspect his wife of wrongdoing. We conclude that the note was not a confidential communication protected by the spousal privilege.

[19] Similarly, we conclude that the prosecution did not knowingly present perjured testimony. The United States Supreme Court has established the " 'standard of materiality' under which the knowing use of perjured testimony requires a conviction to be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *State v. Sanders*, 327 N.C. 319, 336, 395 S.E.2d 412, 424 (1990) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 49 L. Ed. 2d 342, 349-50 (1976)), *cert. denied*, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991). Accordingly, "[w]hen a defendant shows that 'testimony was in fact false, material, and knowingly and intentionally used by the State to obtain his conviction,' he is entitled to a new trial." *Id.* at 336, 395 S.E.2d at 423 (quoting *State v. Robbins*, 319 N.C. 465, 514, 356 S.E.2d 279, 308, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987)).

In the case at bar, it is not clear from the record who gave investigators the note at issue. However, the identity of this person is not determinative because it was not likely to have affected the jury's decision to convict defendant. Both Varden and Virginia Call knew about the existence and the contents of the note. As discussed above, Varden was free to testify about that knowledge. The record does not show that the contents of the note, and thus the inferences raised by those contents, were false or that the prosecution knowingly used false evidence to convict defendant. Therefore, we find no error.

**[20]** Defendant next challenges, on two bases, the legality of the search warrant used to obtain handwriting exemplars. First, defendant argues that the warrant was improperly issued because the application for it relied on communications protected by spousal privilege. More specifically, defendant claims that the application improperly recounted the confession he made to his wife, the contents of the handwritten note, and information that he had registered in a hotel in another county. Second, defendant contends that the magistrate applied the wrong standard for determining probable cause.

At the outset, we note that by failing to challenge the legality of the search warrant either before trial or at trial, defendant did not properly preserve either issue for our review. Defendant did file a "Notice Motion," which requested the trial court to preclude the prosecution from making reference to any statements made by defendant's wife until the court could determine whether the statements were privileged. However, Mrs. Call never testified, and the trial court did not find the note defendant left to be a privileged communication. Furthermore, defendant did not object to the admission of the handwriting exemplars into evidence or make a motion to suppress the handwritten note. By failing to properly preserve these issues, defendant has waived his right to appellate review of them. N.C. R. App. P. 10(b)(1); *State v. Eason*, 328 N.C. 409, 402 S.E.2d 809 (1991). This assignment of error is overruled.

By another assignment of error, defendant raises several arguments in support of his contention that the trial court erred by allowing Henry Drain to interpret Gabriel's testimony. First, defendant contends that Drain was not qualified, was biased because he had worked as an interpreter for local law enforcement, and did not accurately interpret Gabriel's testimony. Defendant also argues that Gabriel did not need an interpreter because he could speak and understand some English. In the alternative, defendant claims that if Gabriel was not fluent in English, then he was not competent to testify as to conversations he heard in English. These contentions are without merit.

**[21]** "The decision to appoint an interpreter rests within the sound discretion of the trial court. Any person who is competent to perform the duty assumed may be appointed as an interpreter." *State v. Torres*, 322 N.C. 440, 443-44, 368 S.E.2d 609, 611 (1988). The trial court's selection of an interpreter will not be overturned on appeal absent a showing of abuse of discretion. *Id.* at 444, 368 S.E.2d at 611. Here, the trial court did not abuse its discretion. Drain explained to

the court that he was originally from Venezuela and that his native tongue was Spanish. He further revealed that he taught Spanish at Wilkes Community College and had been translating in the North Carolina court system for the past eight years. Finally, Drain had lived in both South and Central America and was familiar with several Hispanic dialects. There was plenary evidence before the trial court from which it could reasonably conclude that Drain was qualified.

[22] We now turn to defendant's contention that Gabriel was not competent to testify. The basis of defendant's argument is that if Gabriel indeed cannot speak or understand English, he could not have understood the conversation between defendant and Macedonio the night the victim was killed. Therefore, Gabriel could not testify that defendant offered the victim $25.00 to help him move some furniture. However, the record shows Gabriel was able to understand a few English words and phrases and that defendant spoke a mixture of English and Spanish on the night of the murder. Moreover, this was a short, simple conversation, the gist of which defendant repeated to Gabriel in a manner he could understand, a few hours later. We conclude that Gabriel was competent to testify to his observations.

With regard to the remainder of defendant's arguments which focus on the appointment of interpreter Drain, defendant objected to the appointment on only one ground: that Drain was not qualified. "This Court will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *Eason*, 328 N.C. at 420, 402 S.E.2d at 814. Thus, defendant has failed to preserve the additional grounds presented on appeal. He also waived appellate review of those arguments by failing specifically and distinctly to argue plain error. N.C. R. App. P. 10(c)(4). Accordingly, this assignment of error is overruled.

[23] Defendant next contends that the trial court erred by denying his requests to tape record the testimony of prosecution witnesses in order to assist defense counsel in preparing for cross-examination. Specifically, he complains that these rulings were especially damaging with regard to Gabriel's testimony because, without an interpreter of his own, defendant had no way to check the accuracy of the interpretation or to challenge it on appeal. In support of this contention, defendant cites Rule 15 of the General Rules of Practice for the Superior and District Courts, which permits the use of electronic

media, including tape recorders, in criminal trials. However, defendant's reliance on Rule 15 is misplaced.

Although the rule does permit tape recorders to be present in the courtroom, it also expressly provides that "[t]he presiding justice or judge shall at all times have authority to prohibit or terminate electronic media and still photography coverage of public judicial proceedings." Gen. R. Pract. Super. and Dist. Ct. 15(b)(1), 1998 Ann. R. 11. Here, the trial court denied defendant's motion and chose to rely on the court reporter's recordation of the proceedings. Defendant does not argue that the trial court abused its discretion in ruling upon his motion. We note that the record shows that the trial court heard arguments on the motion before making its ruling and inquired whether defendant needed an interpreter prior to the *voir dire* to qualify Drain as an expert. Defendant declined this assistance. The trial court provided a complete and accurate record of defendant's trial. Accordingly, this assignment of error is overruled.

**[24]** By other assignments of error, defendant complains that the trial court permitted State Highway Patrol Trooper Chuck Olive; Captain Steve Houck of the Ashe County Sheriff's Department; and the victims' employer, David Shatley, to testify regarding several out-of-court statements that did not fit within any exception to the rule against hearsay. These assignments of error are deemed waived for failure to comply with Rule 28(d) of the Rules of Appellate Procedure.

Under Rule 28(d)(1), when the transcript of proceedings is filed pursuant to Rule 9(c)(2), the appellant must attach as an appendix to its brief either a verbatim reproduction of those portions of the transcript necessary to understand the question presented or those portions of the transcript showing the questions and answers complained of when an assignment of error involves the admission or exclusion of evidence. N.C. R. App. P. 28(d)(1)(a), (d)(1)(b). Alternatively, Rule 28(d)(2)(a) provides that when the portion of the transcript necessary to understand the question presented is reproduced verbatim in the body of the brief, appendices to the brief are not required. N.C. R. App. P. 28(d)(2)(a).

In this case, defendant cites several pages of the transcript, but has not identified the specific questions or answers which he wants this Court to review for error. Moreover, defendant has failed to attach the pertinent portions of the transcripts containing the examinations complained of as an appendix to his brief, and he has not

included a verbatim reproduction of those questions or answers in his brief. Accordingly, these assignments of error have been waived and are overruled.

[25] Defendant next argues that the trial court erred by allowing the hearsay testimony of Thomas Reeves and SBI Agent Steven Cabe. More specifically, defendant contends that Reeves should not have been allowed to testify regarding a telephone conversation he had with his mother about Gabriel, who showed up at her home the morning after he was attacked. Similarly, defendant complains that the trial court erroneously allowed Agent Cabe to testify regarding out-of-court statements Varden made to him that incriminated defendant. We find no error.

The North Carolina Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1988). However, out-of-court statements offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. This Court has held that statements of one person to another to explain subsequent actions taken by the person to whom the statement was made are admissible as nonhearsay evidence. *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990).

In the case at bar, the following exchange occurred during the prosecution's direct examination of Reeves:

Q. Now, as a result of the telephone call from your mother, what did you do?

A. I went down to her house. She said ....

MR. LYNCH: .... OBJECTION.

THE COURT: OVERRULED. You can consider what she said for the purpose of showing what he did after talking to her.

Q. Go ahead.

A. She said there was a Mexican there and she couldn't figure out where he wanted to go, and asked, thought he wanted to go to town. And, so I, I was on my way to work ....

MR. LYNCH: .... MOVE TO STRIKE the answer.

THE COURT: MOTION DENIED.

Q. Continue, please?

A. So I drove down to the house for that purpose.

The trial court allowed the testimony for the limited purposes of showing what Reeves did after having the telephone conversation with his mother and why he went to her house. Moreover, this evidence was offered to corroborate Gabriel's testimony. We conclude that Reeves' testimony was proper nonhearsay evidence and that the trial court did not commit error.

[26] Defendant further contends that the trial court erred by allowing Agent Cabe to testify regarding the statement Varden gave to law enforcement officers. We disagree. The trial court has wide latitude in deciding when a prior consistent statement can be admitted for corroborative, nonhearsay purposes. *State v. Levan*, 326 N.C. 155, 388 S.E.2d 429 (1990). In this case, Varden testified that he gave a statement to the police at trial, and he was cross-examined by defendant. Also, the record shows that Agent Cabe's testimony was offered only for corroborative, nonhearsay purposes, and the trial court clearly and correctly instructed the jury on the permissible use of this evidence. Defendant cannot show that the trial court abused its discretion by allowing Agent Cabe's testimony. This assignment of error is overruled.

By this same assignment of error, defendant contends that several rulings by the trial court improperly restricted his examinations of Varden and Captain Houck. On cross-examination, defendant questioned Varden about discrepancies between the narrative prepared by law enforcement officers and his pretrial statement. He also attempted to find out whether Varden was in dire financial trouble and was the subject of domestic-violence complaints by Virginia Call. The record shows that the trial court sustained the prosecution's objections to these lines of inquiry. Similarly, the trial court sustained an objection when defendant asked Captain Houck about the availability of forensic testing for the victim's blood. These rulings, defendant argues, resulted in a violation of a bevy of constitutional guarantees, most notably his right to confrontation. This argument is without merit.

At the outset, we note that defendant's arguments of constitutional error were not raised at trial and, thus, are deemed waived on appeal. *State v. Jaynes*, 342 N.C. 249, 464 S.E.2d 448 (1995), *cert. denied*, 518 U.S. 1024, 135 L. Ed. 2d 1080 (1996); *see* N.C. R. App. P. 10(b)(1). Although defendant cites several pages of the transcript

that report the testimony of both Varden and Captain Houck, he specifically draws our attention only to those portions of the cross-examinations noted above. Because defendant has failed to identify the specific questions or answers which he wants this Court to review, contrary to Rule 28(d) of the Rules of Appellate Procedure, we review only the four aforementioned rulings for error.

A witness may properly be cross-examined on any matter relevant to any issue in the case, including credibility. N.C.G.S. § 8C-1, Rule 611(b) (1997). Moreover, a witness may be impeached on cross-examination by, among other things, evidence of prior convictions, opinion testimony as to reputation, and evidence of specific instances of conduct if probative of truthfulness or untruthfulness. N.C.G.S. § 8C-1, Rules 404, 405, 608, 609 (1997). However, the trial court has broad discretion over the scope of cross-examination. *State v. Warren*, 347 N.C. 309, 492 S.E.2d 609 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 818 (1998).

[27] In this case, the trial court did not abuse its discretion. The record shows that the prosecution's objection to defendant's question regarding inconsistencies in Varden's testimony and his prior statements to law enforcement officers was sustained because the police reduced the statements to a narrative. Even though the substance of the statements was attributed to Varden, the actual words used were not. Accordingly, the trial court properly sustained the objection. The record further reveals that the trial court allowed Varden to testify in response to defendant's question that he was indeed in financial trouble and sustained only the prosecution's objection to repetitious questioning on the subject. Thus, the trial court did not err in this regard. Finally, even assuming Varden had a history of domestic violence for which he had not been convicted, such evidence had no bearing on his truthfulness or untruthfulness in this case and was not proper impeachment evidence. N.C.G.S. § 8C-1, Rule 608(b).

Moreover, we find no error in the trial court's ruling on the prosecution's objection to defendant's question to Captain Houck about the availability of forensic testing for the victim's blood. The record shows that the trial court sustained the objection because it found that Captain Houck was not qualified to answer the question. This notwithstanding, the trial court allowed defendant to make an offer of proof through a *voir dire* of Captain Houck, where defendant ultimately acknowledged that the witness was not competent to answer the question. We conclude that the trial court's rulings were proper. Thus, this assignment of error is overruled.

Defendant's next assignment of error relates to the introduction of evidence that he contends improperly suggested that Macedonio's murder was drug or alcohol related. Defendant further complains that the prosecution introduced inadmissible character and hearsay evidence that defendant was fired from his job, that defendant destroyed evidence, and that additional inculpatory evidence existed but was not discovered by law enforcement officials. According to defendant, these errors violated several rules of evidence including N.C.G.S. § 8C-1, Rule 404(b), as well as numerous state and federal constitutional rights. However, defendant did not raise any constitutional issues at trial and, thus, is precluded from raising them on appeal. N.C. R. App. P. 10(b)(1); *Jaynes*, 342 N.C. 249, 464 S.E.2d 448. With regard to the substantive evidentiary issues, we find no error.

**[28]** Defendant filed a motion *in limine* to exclude the introduction of cigarette rolling paper and beer cans recovered at the edge of the cornfield near the spot where the victim's body was discovered. The trial court deferred ruling on the motion, and at trial, defendant again objected to the admission of the evidence. Defendant contends that such evidence was irrelevant to his guilt and that the trial court erroneously admitted a photograph of and testimony about the items in violation of Rule 404(b). We reject this contention.

Initially, we note that the trial court sustained defendant's objection to the introduction of the actual items; thus, defendant has no grounds upon which to except. *State v. Quick*, 329 N.C. 1, 405 S.E.2d 179 (1991). This notwithstanding, we find no error in the admission of the testimony regarding the foregoing items.

" 'An individual piece of evidence need not conclusively establish a fact to be of some probative value. It need only support a logical inference of the fact's existence.' " *State v. Goode*, 341 N.C. 513, 537, 461 S.E.2d 631, 645 (1995) (quoting *State v. Payne*, 328 N.C. 377, 401, 402 S.E.2d 582, 596 (1991)). In this case, the State's evidence tended to show that defendant lured Gabriel to the same location where he had taken Macedonio and then tried to kill Gabriel. Gabriel testified that defendant offered him a beer and smoked cigarettes while at the cornfield. The jury could reasonably infer from this testimony that defendant also offered Macedonio a beer and smoked around the time of the killing. We conclude that the foregoing testimony was offered to show a portion of what law enforcement officers found at the crime scene and to corroborate Gabriel's testimony, not as improper character evidence. Moreover, defendant failed to move to

strike the testimony of which he now complains, thereby waiving his right to assert error on appeal. *Id.*

We note further that the record does not show that the photograph of which defendant now complains was actually introduced into evidence. Even assuming the photograph was introduced, photographs of the crime scene are admissible in evidence to illustrate the testimony of a witness. *State v. Spangler*, 314 N.C. 374, 333 S.E.2d 722 (1985).

By this same assignment of error, defendant argues that the prosecution improperly insinuated inadmissible character and hearsay evidence that defendant was fired from his job, that defendant destroyed evidence, and that additional inculpatory evidence existed but was not discovered by law enforcement officials. These contentions are also without merit.

[29] The record shows that the trial court sustained several of defendant's objections to such evidence. The trial court sustained defendant's objection when the prosecution asked Trooper Olive what he knew about defendant's being fired from his job with Shatley. The trial court also sustained defendant's objection when Agent Cabe was asked about the possibility of defendant's removing evidence from his truck. Finally, defendant's objection to SBI Agent J.A. Gregory's testimony regarding the possibility of unidentifiable fragments of fiber being from the victim was sustained. Defendant can show no prejudice where his objections are sustained. *Quick*, 329 N.C. 1, 405 S.E.2d 179.

The trial court also properly overruled defendant's objection to testimony from SBI Agents J.S. Taub and Gregory, the prosecution's experts in serology and hair and fiber evidence, respectively, regarding the effects of rain on blood testing and the collection of evidence from the victim's body. The record reveals that Agent Cabe had previously testified that it rained heavily the night Macedonio's body was found. Defendant also cites a portion of the transcript regarding defendant's cross-examination of Agent Taub about testing drag marks for blood. Because the trial court overruled the prosecutor's objection to defendant's inquiry, we cannot find that defendant was prejudiced thereby. Accordingly, this assignment of error is overruled.

[30] By another assignment of error, defendant complains that the trial court erroneously admitted six autopsy photographs of the victim and other irrelevant evidence designed to prompt a verdict based

upon sympathy for the victim. Defendant contends that the photographs were gruesome and inflammatory and had no probative value. In support of this contention, defendant relies on our opinion in *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988).

In *Hennis*, this Court concluded that the admission into evidence of photographs which have no probative value beyond that of previously introduced photos constitutes reversible error where their content is gory, they are redundant and repeatedly shown to the jury, and there is a lack of overwhelming evidence of an accused's guilt. *Id.* at 286-87, 372 S.E.2d at 528. However, we continue to recognize the long-standing rule that photographs of a murder victim, though gory or gruesome, may be introduced for illustrative purposes so long as they are not used in an excessive or repetitious manner aimed exclusively at arousing the passions of the jury. *Id.* at 283, 372 S.E.2d at 526. Moreover, the trial court must still balance the prejudicial effect of relevant evidence, including photographs, against its probative value before that evidence can be introduced or excluded. N.C.G.S. § 8C-1, Rule 403 (1997). Finally, what constitutes an excessive number of photos, given the illustrative value of each, is a matter that falls within the trial court's discretion. *Hennis*, 323 N.C. 279, 372 S.E.2d 523. In light of the foregoing principles, we now review defendant's argument.

Prior to trial, defendant filed a motion *in limine* to have the trial court review the autopsy photographs *in camera* to determine their admissibility. The prosecution attempted to introduce eight autopsy photographs to illustrate the testimony of the pathologist, Dr. Robert Thompson. The trial court deferred ruling upon defendant's motion until Dr. Thompson testified. When Dr. Thompson took the stand, defendant renewed his motion, and the trial court heard arguments out of the presence of the jury. Defendant asked the trial court to review the photographs and cull them so that no repetitive pictures would be introduced. The trial court reviewed the photographs and excluded two of them as repetitive, but allowed the prosecution to introduce the other six for illustrative purposes during Dr. Thompson's testimony.

We note that defendant does not argue that the trial court abused its discretion. Even assuming defendant had raised the issue, we could not conclude, based on the foregoing, that the trial court abused its discretion. We note further that defendant did not object to the trial court's ruling or the subsequent admission of the six

remaining photographs. Therefore, defendant may not raise the issue on appeal. N.C. R. App. P. 10(b)(1). By failing to properly preserve this issue, defendant is entitled to review only for plain error. However, defendant fails to argue plain error, thereby waiving appellate review. N.C. R. App. P. 10(c)(4).

[31] Defendant also argues that the prosecutor made improper use of the autopsy photographs during closing arguments in both the trial and the subsequent capital sentencing proceeding. However, defendant made no objection to argument either at trial or during the capital sentencing proceeding. Therefore, we review only to determine whether the prosecutor's arguments were so improper that the trial court erred by failing to intervene *ex mero motu*. *State v. Sexton*, 336 N.C. 321, 444 S.E.2d 879, *cert. denied*, 513 U.S. 1006, 130 L. Ed. 2d 429 (1994).

In the instant case, the record reveals that the prosecutor merely reminded the jury about the crime-scene photographs during the closing arguments at the conclusion of the trial, and did not present any photographs to the jury. Although the record is unclear whether the jury viewed a crime-scene photograph or an autopsy photograph during closing arguments in the separate capital sentencing proceeding, that fact is of no legal consequence. It was not grossly improper for the prosecution to use photographs, which had been properly introduced as evidence, during closing arguments at trial or during the subsequent capital sentencing proceeding. *State v. Oliver*, 309 N.C. 326, 307 S.E.2d 304 (1983).

[32] Finally, in support of this assignment, defendant contends that the trial court improperly allowed Shatley, the victim's employer, to testify about the good qualities of the victim, including that he sent money home to his family. This contention has no merit. Defendant opened the door to such testimony by soliciting similar information, including what Macedonio Gervacio did with his money, during the cross-examination of Gabriel. Accordingly, this assignment of error is overruled.

[33] By his next assignment of error, defendant contends that the trial court improperly allowed Agent Cabe to testify that tire prints found near the victim's body matched the tread on the tires of defendant's truck. Defendant also claims that the trial court erroneously allowed Dr. Thompson to testify that he was able to determine that the victim suffered eleven blows to the head and that the weapon used was an iron rod found in defendant's truck, without first demon-

strating that forensic pathologists are qualified to render such opinions. Again, these issues were not properly preserved for appellate review because defendant did not object to the testimony at trial. N.C. R. App. P. 10(b)(1); *Eason*, 328 N.C. 409, 402 S.E.2d 809. Therefore, defendant is entitled to review only for plain error. However, defendant has failed to argue plain error, thereby waiving appellate review. N.C. R. App. P. 10(c)(4). Thus, this assignment of error is waived.

Defendant next contends that the prosecution failed to lay a proper foundation for the admission of various items of evidence. However, for the following reasons, defendant has not properly preserved or presented these assignments of error for appellate review.

Initially, we note that although defendant raises five questions by this argument, numbered assignments of error 39, 46, 57, 58, and 59, he only presents arguments for numbers 39, 58, and 59 in his brief. "Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(5). Accordingly, assignments of error numbered 46 and 57 are deemed abandoned.

[34] Defendant first argues that State's exhibit 4, a baseball bat, was not properly authenticated. However, defendant's assignment of error set out in the record on appeal does not present authentication of the bat as an issue for this Court to review. "Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C. R. App. P. 10(a). Moreover, defendant made no objection to the introduction or authentication of the baseball bat at trial. "Assignments of error based on improper authentication of exhibits introduced at trial will not be heard unless objection was made in a timely manner at trial." *State v. York*, 347 N.C. 79, 87, 489 S.E.2d 380, 385 (1997). Accordingly, this assignment of error is dismissed.

Defendant next argues that the prosecution introduced State's exhibit 40, a handwriting exemplar made by defendant, without proving that it was actually taken from defendant. Similarly, defendant complains that the trial court improperly permitted the State's handwriting expert, SBI Agent Thomas Currin, to testify that he had determined that defendant's handwriting was on a pawn-shop receipt by comparing it to handwriting exemplars, even though the receipt was never offered into evidence. Again, defendant failed to object at

trial, thereby waiving appellate review. N.C. R. App. P. 10(b)(1); *Eason*, 328 N.C. 409, 402 S.E.2d 809. Defendant also has failed to preserve this issue for review pursuant to the plain error rule by failing to specifically and distinctly argue plain error. N.C. R. App. P. 10(c)(4).

Finally, defendant contends that the prosecution improperly presented the testimony of Lanny Jones, a local resident, that he saw a truck that resembled defendant's travel at an unusually high rate of speed around the time and near the place that Macedonio was killed. However, this argument does not correspond to any of the assignments of error defendant set out under the question presented. Moreover, this argument does not relate to the question presented. Under the question presented, defendant complains about the foundation and authentication of direct physical evidence. The foregoing argument pertains to the proper identification of defendant's truck—circumstantial evidence that placed defendant in the vicinity of the crime scene at the time the murder was committed. Rule 28 of the Rules of Appellate Procedure requires defendant to argue each of his contentions with respect to each of the questions he presents. N.C. R. App. P. 28(b)(5). Defendant has failed to comply with this rule. Accordingly, this issue is deemed abandoned, and this assignment of error is dismissed.

Defendant's next assignment of error relates to the sufficiency of the evidence presented in support of his armed robbery, kidnapping, and felony murder convictions. In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. *Sexton*, 336 N.C. 321, 444 S.E.2d 879. The trial court must examine the evidence in the light most favorable to the State, granting the State every reasonable inference to be drawn from the evidence. *State v. Gary*, 348 N.C. 510, 501 S.E.2d 57 (1998). We review defendant's contentions in light of the foregoing principles.

[35] Defendant first argues that his felony murder conviction should be vacated because the State presented insufficient evidence that he committed armed robbery. Defendant was indicted for robbery with a dangerous weapon under N.C.G.S. § 14-87. The elements of this offense are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened. N.C.G.S. § 14-87 (1994); *State v. Small*, 328 N.C. 175, 400 S.E.2d 413 (1991). Defendant

argues that, other than Varden's testimony that defendant said he was going to rob the victim prior to the killing and had more money than usual afterwards, the prosecution presented no evidence that defendant took money or anything else from Macedonio. Thus, defendant argues that the prosecution did not carry its burden of proving all the elements of the offense charged. We conclude that the prosecution met its burden.

The evidence presented at trial tended to show that defendant not only told Varden about his plan to rob Macedonio, he also told Varden what happened in the cornfield. In addition, defendant suddenly had enough money to give Varden $210.00 and to pay for a hotel room in Monroe in cash. Finally, the victim, who was known to carry a large sum of money, was found dead with only $9.00 in his possession. Viewed in the light most favorable to the State, we conclude that there was sufficient evidence in this case to support the taking element of armed robbery.

**[36]** By this same assignment of error, defendant contends that the trial court erred by not granting his motion to dismiss the kidnapping charge because the prosecution failed to produce sufficient evidence of the element of restraint to establish the crime of kidnapping. We disagree.

Defendant was charged with and convicted of first-degree kidnapping pursuant to N.C.G.S. § 14-39, which provides in pertinent part:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . . .
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony.

N.C.G.S. § 14-39(a)(2) (1994). Defendant argues that although the victim was found with his hands bound, the prosecution offered no evidence that this restraint occurred prior to or apart from the killing. In support of this contention, defendant relies on this Court's reasoning in *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986). However, the present case is distinguishable from *Prevette*.

In *Prevette*, this Court held that a criminal defendant could not be convicted of both kidnapping and murder where the "restraint essential to the kidnapping conviction was an inherent and inevitable feature of [the] particular murder." *Id.* at 157, 345 S.E.2d at 165. That holding was based upon an erroneous jury charge which allowed the trier of fact to consider the restraint of the victim in an improper manner. Even assuming no additional evidence of restraint was presented in this case, defendant still cannot demonstrate that the trial court erred. The jury in this case did not rely upon the victim's restraint because the trial court's kidnapping charge was based upon the removal of the victim from one place to another, and the underlying felony in support of the felony murder charge was robbery. Moreover, the removal necessary to support a kidnapping conviction can be accomplished by fraudulent means as well as by the use of force, threats, or intimidation. *State v. Sturdivant*, 304 N.C. 293, 283 S.E.2d 719 (1981). Viewed in the light most favorable to the State, the evidence permitted a rational trier of fact to find that defendant lured Macedonio away from his home under the pretense of earning money by moving furniture. We conclude that evidence of this ruse constituted sufficient evidence of a removal to sustain defendant's kidnapping conviction. This assignment of error is overruled.

Defendant next complains that the prosecutor engaged in prejudicial misconduct during closing arguments at the guilt phase, in violation of several of his rights under numerous state and federal constitutional provisions, thus entitling him to a new trial. Although defendant raises eleven assignments of error by this argument, he makes no argument as to assignments of error numbered 69 and 78 in his brief. Those two assignments of error are thus deemed abandoned. N.C. R. App. P. 28(b)(5). Defendant also failed to raise any constitutional claims at trial and is precluded from raising them now on appeal. N.C. R. App. P. 10(b)(1); *Jaynes*, 342 N.C. 249, 464 S.E.2d 448.

The scope of jury arguments is left largely to the control and discretion of the trial court, and trial counsel will be granted wide latitude in the argument of hotly contested cases. *State v. Soyars*, 332 N.C. 47, 418 S.E.2d 480 (1992). Counsel are permitted to argue the evidence presented and all reasonable inferences which can be drawn therefrom. *State v. Williams*, 317 N.C. 474, 346 S.E.2d 405 (1986). Where, as here, defendant failed to object to any of the closing remarks of which he now complains, he must show that the remarks were so grossly improper that the trial court erred by failing

to intervene *ex mero motu. State v. Lemons*, 348 N.C. 335, 356, 501 S.E.2d 309, 322 (1998). In order to carry this burden, defendant must show that the prosecutor's comments so infected the trial that they rendered his conviction fundamentally unfair. *Id.* Moreover, the comments must be viewed in the context in which they were made and in light of the overall factual circumstances to which they referred. *Flowers*, 347 N.C. 1, 489 S.E.2d 391. In light of the foregoing principles, we now address defendant's contentions.

**[37]** Defendant first claims that several of the prosecutors' closing arguments either misstated the evidence or were based upon facts not in evidence. Specifically, defendant contends that the following arguments were improper: (1) the comment that the tire impression at the crime scene and the tire tread from defendant's truck matched perfectly, when Agent Cabe actually testified to a seven-centimeter difference between the two; (2) the remark that Dr. Thompson testified there would not have been much blood splattering if the victim had been killed according to the State's theory, contrary to the witness' actual testimony; (3) the comment that Dr. Thompson testified that the presence of sand and bacteria under the body could explain the absence of a significant amount of blood, when that explanation was part of Agent Taub's testimony; and (4) the argument that the victim suffered nineteen blows to the head, when Dr. Thompson testified that the victim had suffered at least eleven blows. We have thoroughly reviewed the arguments in context and believe that the prosecutors properly argued either the facts that were in evidence or the reasonable inferences taken therefrom, and did not misstate the facts. Moreover, the trial court properly instructed the jurors that they were the finders of fact in the case and should be guided by their own recollection of the evidence, not counsel's arguments. We presume that the jury followed the court's instructions. *State v. Gregory*, 340 N.C. 365, 459 S.E.2d 638 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996).

**[38]** By this same assignment of error, defendant contends that still more improper arguments by the prosecution urged the jury to rely on erroneous legal principles. Defendant first argues that it was improper for the prosecutor to comment that the jury could rely on biblical authority to weigh defendant's flight as evidence of his guilt. When viewed in context, the record reveals that the prosecutor was quoting from and relying upon a decision rendered by this Court to explain the significance of flight to the jury. *See State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842-43 (1977) (" 'The wicked flee when

no man pursueth, but the righteous are bold as a lion.' Proverbs 28, the first verse."). This argument was not improper.

[39] Defendant next complains that it was error for the prosecution to contrast his post-arrest silence with the willingness of Varden to speak with law enforcement officers. "A criminal defendant cannot be compelled to testify, and any reference by the State regarding his failure to do so violates an accused's constitutional right to remain silent." *State v. Randolph*, 312 N.C. 198, 205, 321 S.E.2d 864, 869 (1984). Here, throughout the trial, the defense attempted to show that someone else, either Varden or Gabriel, killed Macedonio Gervacio. During his summation, the prosecutor tried to rebut this theory by arguing that Varden did not change his appearance and his name and leave town, although defendant found it necessary to do all of those things. The prosecutor further remarked that Varden gave the police a complete statement, contrary to what a guilty person might do. At no point did the prosecutor make any reference to defendant's silence. When this argument is viewed in context, it is clear that the prosecutor was properly attempting to rebut defendant's theory of the case. We do not find this argument to be improper.

[40] Defendant further claims that it was error for the prosecutor to argue that the jury should consider defendant's lack of evidence after defense counsel promised in opening statements to present evidence of Varden's violent past and criminal abuse of Virginia Call. We disagree.

During his summation, the prosecutor argued:

Mr. Lynch told you that there would be evidence that Alan Varden has a violent past. There would be evidence that Jennie is a convicted criminal. Where was that evidence? There was no evidence to support any of that.

. . . .

Mr. Lynch promised you that he was going to prove that, that Jennie and Alan's relationship ended with violence that was initiated by Alan Varden. Well where was that evidence? That's something else that we didn't hear any evidence about.

Defendant did not object. This Court has repeatedly held that a prosecutor may properly comment on a defendant's failure to produce witnesses or evidence that contradicts or refutes evidence presented

by the State. *Fletcher*, 348 N.C. 292, 500 S.E.2d 668. We conclude that the comments of the prosecutor, when viewed in context, were not so grossly improper as to require the trial court to intervene on its own motion.

[41] Finally, defendant contends that the prosecutor improperly asked the jury to convict defendant based upon the victim's worth as a person and the impact of his death on his friends. Again, defendant did not object. We have reviewed the record and find this contention to be without merit. Here, the prosecutor merely urged the jurors to remember that Macedonio had been brutally beaten to death, that he was not simply a corpse, and that both the State and defendant were entitled to a fair trial. This argument was proper and therefore could not be "gross impropriety" requiring the trial court to intervene *ex mero motu*.

[42] By this same assignment of error, defendant contends that Assistant District Attorney Garland Baker improperly attempted to reenact the crime during his closing argument by repeatedly swinging objects through the air to simulate the force of an attack and by dropping heavy items on counsel table to simulate each blow. Again, defendant did not object and must show that the prosecutor's argument was so grossly improper that the trial court was required to intervene *ex mero motu*.

In the case *sub judice*, two pieces of a shovel handle, a metal rod, and a baseball bat were introduced into evidence at trial. Dr. Thompson testified that any one of these items could have been used to inflict the blunt-force injuries that caused the victim's death. Defendant challenges the prosecutor's use of the physical evidence during his summation:

> The reason that's important is because of the elements of premeditation and deliberation, because I want you all to think about, think about the mechanics involved in killing somebody.

> And, you pick up an instrument such as this mental [sic] rod (Picks up metal rod from counsel table), put your hand, and wrap your hand around it, that is a conscious act of will and volition.

> I picked up that rod because I wanted to. When this Defendant wrapped his hand around this rod, and picked it up, that was one conscious, willful act.

STATE v. CALL

[349 N.C. 382 (1998)]

And, to hit Macedonio over the head with it or with any other instrument, what does it, what do you have, what do you have to do? What did this Defendant have to do?

He had to draw back with it (Illustrating). That's two willful, conscious acts. And, then, what did he have to do? He had to swing it (Illustrating) forward. That's three voluntary, willful, deliberate and premeditated acts.

Prosecutors may properly display items during closing argument where the item was actually introduced into evidence and is not used in an improper manner. *See State v. Oliver*, 302 N.C. 28, 274 S.E.2d 183 (1981) (a revolver); *see also State v. Holbrook*, 232 N.C. 503, 61 S.E.2d 361 (1950) (a rifle). Here, all of the items were properly introduced into evidence. The prosecutor did not attempt to infer that a particular item was the murder weapon. Rather, the prosecutor attempted to show the premeditation and deliberation necessary to commit the crime. We conclude that this argument was not so grossly improper that the trial court erred or abused its discretion by failing to intervene *ex mero motu*. Accordingly, this assignment of error is overruled.

[43] Defendant next argues that the trial court's jury charge at trial was gravely flawed in a number of crucial respects, in violation of numerous state and federal constitutional rights. First, defendant contends that the trial court erred by declining to instruct the jury on second-degree murder because the evidence of robbery and premeditation and deliberation was not conclusive. Thus, a reasonable juror could have found defendant guilty of only second-degree murder. Second, defendant argues that the trial court erroneously instructed the jury, as part of its first-degree murder charge, that a deadly weapon is one likely to cause "serious injury," rather than "great bodily harm"; failed to define the term "serious injury"; and failed to determine on its own that the object used to kill Macedonio was not a deadly weapon. Defendant also contends that the trial court materially amended the indictment by instructing the jury on the charge of first-degree murder based upon robbery and premeditation although the indictment did not allege either theory as elements of the crime. By way of a footnote, defendant further contends that the trial court also failed to instruct the jury on: (1) the victim's age as an element of first-degree kidnapping; (2) that defendant could not be convicted unless the victim's removal was a separate, complete act, independent of the murder; and (3) that the charge of assault with a deadly weapon with intent to kill inflicting serious injury involved a

different victim than the murder charge. This assignment of error is without merit.

Initially, we note that defendant failed to raise any constitutional claims at trial, and thus, is barred from raising them for the first time on appeal to this Court. *State v. Billings*, 348 N.C. 169, 500 S.E.2d 423, *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 67 U.S.L.W. 3336 (1998). Defendant also failed to properly preserve this issue for our consideration by not objecting to the instructions either during the charge conference or before the jury retired. Rule 10(b)(2) of our Rules of Appellate Procedure requires a party challenging any portion of a jury charge, or omission therefrom, to object to the charge before the jury retires. N.C. R. App. P. 10(b)(2); *State v. Fennell*, 307 N.C. 258, 297 S.E.2d 393 (1982). Therefore, defendant is entitled only to review pursuant to the plain error rule. N.C. R. App. P. 10(c)(4). However, defendant failed to specifically and distinctly argue plain error, thereby waiving appellate review. *Id.* This assignment of error is deemed waived.

For the foregoing reasons, we conclude that the trial at which defendant was found guilty of first-degree murder, first-degree kidnapping, and robbery with a dangerous weapon was free of prejudicial error.

[44] Finally, defendant raises no arguments with respect to his assault conviction. Nevertheless, where it appears from the face of the indictment that the conviction and sentence are void, this Court will, of its own motion, arrest judgment. *State v. Brower*, 272 N.C. 740, 158 S.E.2d 822; *State v. Lucas*, 244 N.C. 53, 92 S.E.2d 401 (1956). Here, the indictment charged defendant with assault with a deadly weapon with intent to kill inflicting serious injury upon Gabriel Hernandez Gervacio. However, the evidence presented at trial revealed the assault victim's correct name as Gabriel Gonzalez. "Where an indictment charges the defendant with a crime against someone other than the actual victim, such a variance is fatal." *State v. Abraham*, 338 N.C. 315, 340, 451 S.E.2d 131, 144 (1994). In such a case, "the trial court should dismiss the charge stemming from the flawed indictment and grant the State leave to secure a proper bill of indictment." *Id.* at 341, 451 S.E.2d at 144. Therefore, we arrest judgment as to defendant's conviction for assault with a deadly weapon with intent to kill inflicting serious injury committed against Gabriel Hernandez Gervacio, 96-CRS-487, and remand this matter to the trial court for further proceedings consistent with our holding in *Abraham*.

## CAPITAL SENTENCING PROCEEDING

**[45]** By another assignment of error, defendant contends that the trial court erred in the separate capital sentencing proceeding by allowing the prosecution to argue that defendant should be sentenced to death based upon improperly elicited testimony that he had not confessed or expressed remorse to his jailers, in violation of his right to due process and privilege against self-incrimination. We agree.

When defendant was brought before the District Court, Ashe County, for his first appearance, the judge informed defendant of his constitutional right to remain silent, as required by statute. Defendant, who was incarcerated in the Ashe County jail between the time of his arrest and his trial, never waived that privilege. He made no statement of any kind to any law enforcement officer who arrested him or investigated this case. Defendant did not testify at either the guilt phase or the separate capital sentencing proceeding. Finally, the defense did not present any evidence or argument, either at defendant's trial or the separate capital sentencing proceeding, regarding statements made by defendant relating to the crimes or his feelings or attitude toward the victims.

At the capital sentencing proceeding, defendant called four jailers to testify that he had been a model prisoner during his pretrial incarceration. The prosecution then elicited testimony, over defendant's objections, from each of these jailers that defendant had neither confessed nor shown remorse for the crimes he was accused of committing. This testimony was improperly allowed.

In *State v. Hoyle*, 325 N.C. 232, 382 S.E.2d 752 (1989), we stated:

> The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 49 L. Ed. 2d 91 (1976), that when a person under arrest has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), which includes the right to remain silent, there is an implicit promise that the silence will not be used against that person.

*Hoyle*, 325 N.C. at 236, 382 S.E.2d at 754. The United States Supreme Court has stated that the rule in *Doyle* "is not simply a further extension of the *Miranda* prophylactic rule," but "is rooted in fundamental fairness and due process concerns." *Brecht v. Abrahamson*, 507 U.S. 619, 629, 123 L. Ed. 2d 353, 367 (1993). Accordingly, "[u]nder the

rationale of *Doyle*, due process is violated whenever the prosecution uses for impeachment purposes a defendant's post-*Miranda* silence." *Id.* We hold that the testimony from the jailers, in this case, violated the rule in *Doyle* and should have been excluded because it resulted in an unconstitutional use of defendant's exercise of his right to silence.

A prosecutor may bring a criminal defendant's lack of any demonstration of remorse to the attention of the jury, so long as the prosecutor does not urge the jury to consider lack of remorse as an aggravating circumstance. *Billings*, 348 N.C. 169, 500 S.E.2d 423. However, the prosecutor's questions in this case clearly emphasized to the jury that defendant had not denied the accusations and encouraged the jury to use his exercise of his right to silence against him when considering whether to recommend life or death. Accordingly, we must vacate defendant's death sentence and remand this case for a new capital sentencing proceeding.

**[46]** Defendant next contends that in instructing the jury as to how it should determine whether aggravating circumstances existed, the trial court improperly allowed the jury to consider whether Macedonio's murder was "committed while [defendant] was engaged in the commission of a kidnapping," N.C.G.S. § 15A-2000(e)(5) (1997), and whether the murder "[w]as . . . committed for pecuniary gain," N.C.G.S. § 15A-2000(e)(6). Defendant argues that the jury was thereby permitted to improperly engage in "double-counting." The jury answered "yes" to both aggravators. Because we are granting a new capital sentencing proceeding on other grounds, we need not address this argument. However, due to the likelihood of this issue arising at a new capital sentencing proceeding, we choose to address defendant's argument at this time.

"Double-counting" occurs when two aggravating circumstances based upon the same evidence are submitted to the jury. *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134 (1997), and *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 473 (1998). However, some overlap in the evidence supporting each aggravating circumstance is permissible so long as there is not a complete overlap of evidence. *Id.* Defendant argues that the submission of both the (e)(5) and (e)(6) aggravating circumstances in this case constitutes impermissible double-counting. We disagree.

The trial court instructed the jury on the (e)(5) aggravating circumstance as follows:

Now, if you find from the evidence beyond a reasonable doubt that when the Defendant killed the victim, the Defendant was removing the victim from one place to another without the victim's consent, to facilitate robbery, and did not release the victim in a safe place, if all twelve of you so find and find beyond a reasonable doubt, you would find this aggravating circumstance, and would so indicate by having your foreman write space, in the space, write "Yes" in the space after the aggravating circumstances on the form.

The trial judge then instructed the jury on the (e)(6) circumstance:

A murder is committed for pecuniary gain if the Defendant, when he commits it, has obtained or intends to, or expects to obtain, obtain money or some other thing which can be valued in money as a result of the death of the victim.

If you find from the evidence beyond a reasonable doubt that when the Defendant killed the victim, the Defendant took money from the victim, you would find this aggravating circumstance and would so indicate by having your foreman write "Yes" in this space.

Even though the jury would necessarily have to consider evidence of the robbery to find each aggravating circumstance, it is clear from the record that the trial court did not allow the jury to find both aggravating circumstances using the exact same evidence. Further, both circumstances were supported by sufficient, independent evidence, apart from that which overlapped, upon which the jury could rely.

For the foregoing reasons, we find no error in defendant's trial and conviction, but we vacate the sentence of death entered at the conclusion of the separate capital sentencing proceeding following the trial and remand this case to Superior Court, Ashe County, for a new capital sentencing proceeding. We arrest judgment on defendant's assault conviction in case 96-CRS-487 and remand that case for further proceedings.

FIRST-DEGREE MURDER: NO ERROR IN GUILT-INNOCENCE PHASE; DEATH SENTENCE VACATED; REMANDED FOR NEW CAPITAL SENTENCING PROCEEDING.

ROBBERY WITH A DANGEROUS WEAPON: NO ERROR.

FIRST-DEGREE KIDNAPPING: NO ERROR.

ASSAULT WITH A DEADLY WEAPON WITH INTENT TO KILL INFLICTING SERIOUS INJURY: JUDGMENT ARRESTED; REMANDED.

Justice WYNN did not participate in the consideration or decision of this case.